STATE OF CONNECTICUT *v.* RONALD RUMORE
(9794)

DUPONT, C. J., O'CONNELL and FOTI, Js.

Argued December 12, 1991—decision released July 28, 1992

*Christopher M. Cosgrove,* assistant public defender, for the appellant (defendant).

*Marjorie Allen Dauster,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Edward Narus,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2),[1] assault of a victim sixty or older in the first degree in violation of §§ 53a-59a (a)[2] and

---

[1] General Statutes § 53a-101 (a) provides in pertinent part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

[2] General Statutes § 53a-59a (a) provides: "A person is guilty of assault of a victim sixty or older in the first degree, when he commits assault in

53a-59 (a) (3)[3] and robbery in the first degree in viola-
tion of General Statutes § 53a-134 (a) (1).[4] The defend-
ant was found not guilty of attempt to commit sexual
assault in the first degree in violation of General Stat-
utes §§ 53a-70 (a)[5] and 53a-49 (a) (2)[6] and of sexual
assault in the third degree in violation of General Stat-
utes § 53a-72a (a) (1) (A).[7]

The defendant claims that the trial court improperly
(1) admitted evidence under the constancy of accusa-
tion exception to the hearsay evidence rule, (2) admit-
ted exhibits into evidence despite a defective chain of
custody, and (3) marshaled the evidence against the
defendant. The defendant also claims that the evidence

the first degree under section 53a-59 (a) (2) or 53a-59 (a) (3) and the victim
of such assault has attained at least sixty years of age or is blind or physi-
cally disabled, as defined in section 1-1f."

[3] General Statutes § 53a-59 (a) provides in pertinent part: "A person is
guilty of assault in the first degree when . . . (3) under circumstances
evincing an *extreme indifference to human life* he recklessly engages in con-
duct which creates a risk of death to another person, and thereby causes
serious physical injury to another person." (Emphasis added.)

[4] General Statutes § 53a-134 (a) provides in pertinent part: "A person
is guilty of robbery in the first degree when, in the course of the commis-
sion of the crime or of immediate flight therefrom, he or another participant
in the crime: (1) Causes serious physical injury to any person who is not
a participant in the crime . . . ."

[5] General Statutes § 53a-70 (a) provides in pertinent part: "A person is
guilty of sexual assault in the first degree when such person (1) compels
another person to engage in sexual intercourse by the use of force against
such other person or a third person, or by the threat of use of force against
such other person or against a third person which reasonably causes such
person to fear physical injury to such person or a third person . . . ."

[6] General Statutes § 53a-49 (a) provides in pertinent part: "A person is
guilty of an attempt to commit a crime if, acting with the kind of mental
state required for commission of the crime he . . . (2) intentionally does
or omits to do anything which, under the circumstances as he believes them
to be, is an act or omission constituting a substantial step in a course of
conduct planned to culminate in his commission of the crime."

[7] General Statutes § 53a-72a (a) provides in pertinent part: "A person
is guilty of sexual assault in the third degree when such person (1) compels
another person to submit to sexual contact (A) by the use of force against
such other person or a third person . . . ."

was insufficient to prove the element of serious physical injury beyond a reasonable doubt as required by General Statutes § 53a-134 (a) (1). We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. At approximately 7:45 p.m. on January 4, 1990, the doorbell rang at the Enfield home of the seventy year old victim. An exterior light over the door afforded the victim a clear look at the side of the defendant's face from a distance of eighteen to twenty-four inches. When the defendant failed to give a satisfactory reason for his presence, the victim told him she was going to call the police. She dialed the emergency 911 number, but before she could determine whether the phone connection had been completed, the defendant broke down the door and lunged at her. He punched the left side of her face, then grabbed her by the ankles, thereby picking her up off the ground. She fell backward and lost consciousness. Upon regaining consciousness, she could not immediately stand because her slacks and underwear were below her hips. Her sweatshirt and lower torso were wet and she was bleeding from a cut on the back of her head.

At this point, the police, who had heard screaming over the 911 telephone connection, arrived. They administered first aid and arranged for transportation to Saint Francis Hospital in Hartford. Before leaving for the hospital, it was discovered that the victim's wallet, containing $30 and credit cards, was missing.

At the hospital, the victim discovered that the nipple of her left breast was partially torn. The hospital record contains the following entry: "Patient had been undressing for bed at the time and had unbuckled her bra. Upon awakening, her clothes were all intact but she had bleeding from left nipple. She does not believe she was sexually assaulted and injury to left nipple was

from wire in bra. Presently, patient has no complaints." The hospital records were introduced as a defense exhibit pursuant to General Statutes § 4-104.

Meanwhile, at the victim's house, the police continued their investigation with the assistance of a state police tracking dog. The dog's handler testified at trial concerning the route of a person whose footprints were found in the snow outside the victim's house. Although the defendant's residence was about 500 yards from the victim's house, the dog did not track in that direction—in fact, it followed a trail leading in the opposite direction. The police made plaster casts of the footprints. Three weeks later the casts were sent to the state forensic laboratory for comparison with boots that had been seized from the defendant's house pursuant to a search warrant.

At the hospital, the victim told her daughter that she thought the defendant was her attacker. The daughter relayed this information by telephone to the Enfield police. Although at least two attempts at a photographic identification were inconclusive, a face-to-face show-up produced a positive identification of the defendant, who was then arrested.

At trial, the defendant relied on an alibi defense that he was at home at the time of the incident.

Additional facts pertaining to individual issues are included in the following discussion.

## I

### CONSTANCY OF ACCUSATION

The defendant first complains that the trial court improperly allowed testimony from both the victim's daughter and a detective under the constancy of accusation exception to the hearsay rule. The defendant contends that the exception was erroneously applied

because the victim did not expressly testify that she had been sexually assaulted. The victim's daughter testified, inter alia, that her mother had named the defendant as her attacker. The police detective testified, inter alia, that the victim had told him that upon regaining consciousness she had found that her underwear had been pulled down around her hips and that a portion of her torso and clothing were wet.

Under our constancy of accusation rule, a witness in a sexual assault case is permitted to testify concerning the victim's prior consistent statements about the assault and the identity of the attacker, provided the victim has first testified about the incident and has testified as to those persons whom she has told about the incident. *State* v. *Rodgers,* 207 Conn. 646, 649–50, 542 A.2d 1136 (1988). In the present case, the victim testified concerning everything that she knew about the incident and identified her daughter and the detective as the persons to whom she had reported these facts. The defendant argues, however, that the victim failed to testify from her own knowledge that she had been sexually assaulted and, therefore, the constancy of accusation exception to the hearsay evidence rule does not apply. The cause of the victim's lack of complete knowledge was the fact that she lost consciousness shortly after the assault began. A similar situation occurred in *State* v. *Rodgers,* supra, where the victim was rendered unconscious shortly after the attack commenced. The *Rodgers* court ruled that as long as a reasonable inference could be drawn that a sexual assault had occurred, the constancy of accusation exception applied because holding otherwise "would confer a benefit on defendants who render their victims unconscious during sexual assaults, and . . . thereby deprive the state of the ability to present constancy of accusation evidence as to the circumstances surrounding an alleged sexual assault." Id., 650.

In the present case, the victim testified that early in the attack she fell to the floor, struck her head and lost consciousness. Upon regaining consciousness, her pants and underwear were down below her hips, her sweatshirt was wet and the nipple of her left breast was bleeding where it was torn. The trial court could reasonably have inferred that attempted sexual assault in the first degree or sexual assault in the third degree had taken place.

The defendant next argues that the victim's statements in the hospital report, that she did not believe that she had been sexually assaulted, and that a wire in her brassiere had caused the torn nipple, mandate reversal. We do not agree. The hospital records were not before the court at the time of its ruling on the constancy exception. Further, upon admission of the records into evidence, the defendant did not move to strike the constancy testimony on this basis. Moreover, the victim's hospital statement is not inconsistent with the crimes charged. The fourth count charged the defendant with *attempted,* not completed, sexual assault in the first degree. A denial that she, in fact, had been sexually assaulted is therefore consistent with the charge of attempted sexual assault in the first degree. Finally, although the fifth count charged the defendant with sexual assault in the third degree, it is reasonable to assume that, as a person lacking knowledge of our criminal code, the victim did not know that the touching of intimate parts could constitute sexual assault in the third degree.[8]

---

[8] General Statutes § 53a-65 (3) provides: " 'Sexual contact' means any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person or any contact of the intimate parts of the actor with a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person."

General Statutes § 53a-65 (8) provides: " 'Intimate parts' means the genital area, groin, anus, inner thighs, buttocks or breasts."

The defendant also argues that this misapplication of the constancy of accusation rule allowed the state to put facts before the jury that it would not have otherwise heard. The only fact not included in the victim's testimony was the detective's statement that the victim's torso was wet. In view of the fact that the victim had testified that her sweatshirt was wet, however, we cannot conclude that the additional fact that her torso was also wet has material significance.

Nor is the defendant's acquittal of the sexual assault counts significant. They were properly before the trial court when the evidentiary ruling on constancy of accusation was made. The trial court cannot be expected to forecast the outcome of the case. The trial court properly admitted the testimony of the victim's daughter and the detective into evidence under the constancy of accusation rule.

## II

### STATE'S EXHIBITS

### A

#### CHAIN OF CUSTODY

The defendant next contends that the trial court improperly admitted the plaster casts of boot prints into evidence over the defendant's objection that a proper chain of custody had not been established. A detective testified that, on the night of the crime, he made plaster casts of boot prints that were found in the snow outside the victim's window. The detective wrapped the casts in newspaper and placed them in the evidence locker. About three weeks later, pursuant to a search warrant, a pair of boots was seized from the defendant's house. The detective gave instructions for the police department's civilian aide to take both the casts and the boots to the state police forensic laboratory for comparison. The detective also testified that the casts

were in substantially the same condition at trial as when he had made them. The defendant objected to their admission on the ground that there had been no showing of the chain of actual care and custody of the casts from the time they were made until they were sent to the forensic lab.

The state's burden is satisfied by showing that the exhibit is the actual item in question; see B. Holden & J. Daly, Connecticut Evidence (1988) § 91c; and that there is a reasonable probability that the item has not been changed in any important respect. *State* v. *Greene,* 209 Conn. 458, 479, 551 A.2d 1231 (1988). It is not necessary for every person who handled the item to testify in order to establish the chain of custody. It is sufficient if the chain of custody is established with reasonable certainty to eliminate the likelihood of mistake or alteration. *State* v. *Burns,* 23 Conn. App. 602, 614–15, 583 A.2d 1296 (1990). The trial court properly ruled that a sufficient foundation had been laid for the admission of the casts when the detective testified that there was no substantial change in the casts after they were made.

## B

### TAMPERING

After the admission of the plaster casts into evidence, it came to light that the date on the newspaper in which the casts were wrapped was later than the date on which the officer testified he had originally wrapped them. The officer explained that when the boots were given to him, he rewrapped the casts and the boots together for transport to the lab. The defendant, however, raised no additional objection following disclosure of the rewrapping. Accordingly, for two reasons, we will not review the defendant's claim that the issue of the newspaper dates shows a probability of tampering. First, at best, it is only a claim of tampering with the

wrapping and not a claim of tampering with the exhibit itself. Second, in the absence of an exception, the claim was not properly preserved. Because this is a claimed error in a discretionary evidentiary ruling, it is not entitled to *Evans-Golding*[9] review. *State* v. *King,* 216 Conn. 585, 590, 583 A.2d 896 (1990).

## III

### MARSHALING OF FACTS

The defendant next argues that the trial court deprived him of his constitutional right to a fair trial by unfairly marshaling facts in favor of the state. "A trial court often has not only the right, but also the duty to comment on the evidence." *State* v. *Hernandez,* 218 Conn. 458, 461–62, 590 A.2d 112 (1991). "Fair comment does not become improper merely because it tends to point out strengths, weaknesses, or difficulties of a particular case." (Internal quotation marks omitted.) *State* v. *Pollitt,* 205 Conn. 132, 157, 531 A.2d 125 (1987). In marshaling the evidence, the court must be careful not to imply any favor or criticism of either side. *State* v. *Hernandez,* supra, 463. " 'The trial court may, at its discretion, call the attention of the jury to the evidence, or lack of evidence, bearing upon any point in issue and may comment upon the weight of the evidence so long as it does not direct or advise the jury how to decide the matter.' " *State* v. *Shannon,* 212 Conn. 387, 408, 563 A.2d 646, cert. denied, 493 U.S. 980, 110 S. Ct. 510, 107 L. Ed. 2d (1989). The test of a court's instruction is " 'whether, taken as a whole, [it] fairly and adequately present[s] the case to a jury in such a way that injustice is not done to either party under the established rules of law.' " *State* v. *Tatum,* 219 Conn. 721, 734, 595 A.2d 322 (1991).

---

[9] *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989); *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

The defendant's reliance on *Hernandez* is misplaced. In *Hernandez*, the defendant's conviction was reversed because the trial court detailed the state's evidence and commented favorably on the credibility of the state's witnesses, but made only a slight reference to the defendant's exculpatory evidence or to his theory of defense. *State* v. *Hernandez*, supra, 464. By contrast, the trial court here, detailed the defendant's theories of defense, (i.e., alibi, absence of sexual assault and unreliability of identification) and outlined the evidence supporting these defenses. In addition, the court properly instructed the jury on evaluating identification and expert testimony.

As part of his improper marshaling argument, the defendant further argues that the trial court made only "fleeting reference" to the hospital report that contained the victim's comment that she did not feel that she had been sexually assaulted. Insofar as the claimed improper treatment was relevant to the sexual assault counts, such a claim is now moot because the defendant was acquitted on these counts. Insofar as it is relevant to the "serious physical injury" element of the robbery and assault counts, we conclude that, viewing the charge in its entirety, the two references to the report in the jury charge did not mislead or improperly influence the jury. *State* v. *Shannon*, supra; *State* v. *Owens*, 25 Conn. App. 181, 191, 594 A.2d 991, cert. denied, 220 Conn. 910, 597 A.2d 337 (1991).

## IV

### SUFFICIENCY OF EVIDENCE

The defendant's final claim is that the evidence presented at trial was insufficient to convict him of robbery in the first degree and assault of a victim sixty years or older in the first degree. The defendant's argument focuses on the "risk of death" and the "serious physical injury" elements of these crimes.

"In reviewing the sufficiency of the evidence, an appellate court, first, must examine the evidence presented at trial in the light most favorable to sustaining the verdict . . . and, second, must determine whether, when considered in that light, the evidence could have led a jury to conclude beyond a reasonable doubt that the defendant was guilty." (Citations omitted.) *State* v. *Aleksiewicz,* 20 Conn. App. 643, 646–47, 569 A.2d 567 (1990).

In the present case, the victim lost consciousness after the defendant lifted her by her ankles, thereby causing her to fall to the floor. When she regained consciousness, she found blood running from a deep laceration in the back of her head, abrasions to the left side of her face and back, and an injury to the nipple of her left breast. These injuries caused her pain and she was taken to Saint Francis Hospital where she was treated in the emergency room and discharged. Staples were used to close the wound to her head, and it was necessary to remove surgically the torn portion of the injured nipple.

The second count of the information charged the defendant with assault of a victim sixty years or older in the first degree by virtue of having committed assault in the first degree in violation of General Statutes § 53a-59 (a) (3). To establish guilt beyond a reasonable doubt under this subsection of the statute, the state must prove that under circumstances evincing an extreme indifference to human life, the *defendant recklessly engaged in conduct which created a risk of death* to the victim and thereby caused serious physical injury to her.[10]

The risk of death element of the statute focuses on the conduct of the defendant, not on the resulting injury to the victim. The statute does not require that the vic-

---

[10] See footnote 3, supra.

tim was in fact at a risk of death. The issue is whether grabbing a seventy year old woman by the ankles and picking her up so that she is thrown against an object causing a head laceration and unconsciousness is reckless conduct that creates a risk of death. The jury could properly infer that this constituted reckless conduct that created a risk of death to the victim. We cannot substitute our judgment for that of the jury. *State* v. *Almeda,* 211 Conn. 441, 450, 560 A.2d 389 (1989).

We next consider whether the state has proven that the victim suffered serious physical injury, which is an element common to both the robbery and assault charges. " 'Serious physical injury' means physical injury which creates a substantial risk of death or which causes serious disfigurement, serious impairment of health or serious loss or *impairment of the function of any bodily organ.* " (Emphasis added.) General Statutes § 53a-3 (4). Whether a victim has suffered serious physical injury is a question of fact for the jury. *State* v. *Graham,* 21 Conn. App. 688, 717, 575 A.2d 1057, cert. denied, 216 Conn. 805, 577 A.2d 1063 (1990). Although our case law apparently does not require expert medical testimony to establish the element of serious physical injury, there must be sufficient direct or circumstantial evidence or a combination of both presented to the jury from which it may find such injury.

The prosecution and the trial court both relied on the victim's unconsciousness after she had fallen to the floor to satisfy the serious injury requirement. In the assault instruction, the trial court told the jurors that it was up to them "to determine *from your common experience* whether or not [the unconsciousness] was a serious impairment of a bodily organ." (Emphasis added.) In the robbery instruction, the trial court charged the jury that "it may be *inferred that* . . .

by a loss of consciousness there is an impairment of the function of the brain, an organ of the body." (Emphasis added.)

It is axiomatic that it is the function of the jury to consider the evidence, draw reasonable inferences from the facts proven and to assess the credibility of witnesses, and it is the duty of this court to view the evidence in the light most favorable to upholding the verdict. *State* v. *Avcollie,* 178 Conn. 450, 461, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980).

The statute does not require that the impairment of the organ be permanent. The jury could properly interpret the evidence to prove that the victim's brain was not functioning at a cognitive level when she was unconscious and thus was impaired. "Despite the difficulty of drawing a precise line as to where 'physical injury' leaves off and 'serious physical injury' begins, in light of the evidence concerning the extent of [the] injuries [sustained by the victim here], we cannot say as a matter of law that the jury could not reasonably have found that [she] suffered 'serious physical injury.' " *State* v. *Miller,* 202 Conn. 463, 489, 522 A.2d 249 (1987). The serious physical injury element was satisfied and consequently there was sufficient evidence presented at trial to convict the defendant of robbery in the first degree and assault of a victim sixty or over in the first degree.

The judgment is affirmed.

In this opinion the other judges concurred.