STATE OF CONNECTICUT *v.* DELMAR EARL JONES
(12172)

DUPONT, C. J., FOTI and LANDAU, Js.

808

Argued April 25—decision released June 3, 1994

*Margaret P. Levy,* for the appellant (defendant).

*David J. Sheldon,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Dennis J. O'Connor,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the trial court's judgment of conviction, rendered after a trial to the court, of assault in the first degree in violation of General Statutes § 53a-59 (a) (3), and risk of injury to a child in violation of General Statutes § 53-21.[1]

---

[1] General Statutes § 53a-59 (a) provides in pertinent part: "A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely

The defendant claims that the trial court improperly: (1) held that the evidence was sufficient to prove beyond a reasonable doubt that the defendant recklessly engaged in conduct that created a risk of death to another person, (2) admitted the defendant's statement made after several requests for the assistance of counsel, (3) admitted the defendant's statement, which was not made knowingly and intelligently given his mental deficiency, in violation of the defendant's constitutional rights.

The trial court reasonably could have found the following facts. On June 10, 1990, the defendant was living with Eloise Frett and their six month old son, S, and Frett's two year old child.[2] Frett spent the day at her sister's apartment doing laundry and caring for her two children. In the evening, Frett returned to her apartment, fed her children, and put S to bed. The defendant had left the apartment during the afternoon, and returned at approximately 10 or 11 p.m. S, who had just awakened, was in his walker, playing with the two year old and laughing. Frett changed the baby's diaper, returned him to his walker, and then left the apartment to use a public telephone to call her mother. Only the defendant and the children were in the apartment. Frett was absent for more than one hour. Upon her return, the defendant and the two year old were watching television. When Frett asked the defendant where S was, he told her that he was sleeping on their bed. Frett found S in a crawling position on the bed with his eyes closed. She was unable to awaken him. Frett asked the defendant if anything unusual had hap-

to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[2] In accordance with General Statutes § 46b-142 (b) and Practice Book § 4166B.2, the name of the minor child in this appeal is not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

pened to S and was told no. Frett summoned her sister, Joan, who came to Frett's apartment. Joan placed her finger in S's mouth. He bit down on her finger and would not release it. The women called an ambulance, and S was taken to Saint Francis Hospital.

Upon his admission to the hospital, S was unresponsive and could not be awakened; he was comatose. The medical staff at Saint Francis found that S suffered seizures approximately every forty minutes, his eye cavities were filled with blood from brain hemorrhaging, and the retina of one eye was detached. A staff physician who examined S believed that his condition would deteriorate and he would be incapable of sustaining life without respirator support. He arranged for S to be transferred to Hartford Hospital for that purpose.

An examination of S at Hartford Hospital revealed that his injuries had been sustained within the previous twenty-four hours and resembled injuries commonly caused by severe shaking and a sudden impact with a hard surface. S's condition was diagnosed as severe cerebral injury known as "shaken baby syndrome."[3] Further examination of S indicated that he had received other serious injuries recently. As a result of his injuries, S is permanently blind, will have severe motor impairment, will experience seizures for many years, perhaps for the rest of his life.

Additional facts pertaining to individual issues are given as necessary to address the defendant's claims.

The defendant's first claim is that there was no evidence from which the trial court reasonably could have inferred that the defendant's conduct created a risk of death to S. The defendant contends that expert testimony was lacking as to the creation of a risk of death.

---

[3] See State v. McClary, 207 Conn. 233, 246, 541 A.2d 96 (1988) (finding that shaken baby syndrome is diagnosis generally accepted in medical field).

The defendant also challenges the trial court's finding that his conduct was reckless beyond a reasonable doubt.

" 'When reviewing a sufficiency of the evidence claim, we first examine the evidence in the light most favorable to upholding the jury's verdict. *State* v. *Avis,* 209 Conn. 290, 309, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989); *State* v. *Rice,* 25 Conn. App. 646, 650, 595 A.2d 947 (1991). We then determine on the basis of the facts established and the inferences that reasonably could be drawn from those facts whether the jury reasonably could have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Famiglietti,* 219 Conn. 605, 609, 595 A.2d 306 (1991); *State* v. *Hopes,* 26 Conn. App. 367, 376, 602 A.2d 23, cert. denied, 221 Conn. 915, 603 A.2d 405 (1992). We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. *State* v. *Robinson,* 213 Conn. 243, 254, 567 A.2d 1173 (1989).' *State* v. *Lago,* 28 Conn. App. 9, 30, 611 A.2d 866, cert. denied, 223 Conn. 919, 614 A.2d 826 (1992). Our inquiry into whether the evidence in the record would support a finding of guilt beyond a reasonable doubt does not require us to ask if we believe that the evidence established guilt beyond a reasonable doubt, but rather if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis in original.) *State* v. *Boykin,* 27 Conn. App. 558, 563–64, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992). Once a defendant has been found guilty of the crime charged, we conduct our judicial review of all of the evidence in the light most favorable to the prosecution. Id., 564." *State* v. *Hamilton,* 30 Conn. App. 68, 71–72, 618 A.2d 1372 (1993), aff'd, 228 Conn. 234, 636 A.2d 760 (1994).

In *State* v. *Rumore,* 28 Conn. App. 402, 413, 613 A.2d 1328, cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992), this court held that "[t]he risk of death element of the [General Statutes § 53a-59 (a) (3)] focuses on the conduct of the defendant, not on the resulting injury to the victim."[4] "The statute does not require that the victim was in fact at a risk of death." Id., 414. The issue is whether violent shaking and a sudden impact of an infant with a hard surface is reckless conduct that creates a risk of death. Id. General Statutes § 53a-3 (13) provides that "[a] person acts 'recklessly' with respect to a result . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that such a result will occur . . . . The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . ." S suffered injuries from violent shaking and a sudden impact with a hard surface. Such treatment of *any* child is a *gross* deviation from a reasonable standard of conduct. The defendant had prepared breakfast for the two children that morning. He was familiar with the proper care and treatment of young children. The record adequately supports the trial court's finding that violent shaking and subjecting the infant to a sudden impact is reckless conduct beyond a reasonable doubt.

The extent of the infant's injuries also indicates a conscious disregard of a substantial risk of death. For about one hour, the time between Frett's departure from the apartment when S was seemingly uninjured and her return and finding him injured, the defendant did not call an ambulance or seek help for S. S arrived at Saint Francis Hospital in a coma, and he was suffering from recurring seizures every thirty to forty minutes. The examining physician found it medically necessary to

---

[4] The defendant urges this court to reexamine our holding in *State* v. *Rumore,* supra, 28 Conn. App. 413. We decline to do so.

transport the infant to Hartford Hospital because his condition could deteriorate to a point at which the infant could not sustain life without respirator assistance. We conclude that the trial court reasonably could find beyond a reasonable doubt that the defendant's conduct was reckless and that such conduct created a risk of death to S.

The defendant next claims that the trial court improperly admitted his statement made after his requests for the assistance of counsel in violation of his constitutional rights under the fifth and fourteenth amendments to the United States constitution.

Additional facts are necessary for the resolution of this issue. On July 26, 1990, Detective Ernest Scott of the youth services division of the Hartford police department went to the defendant's apartment, and asked him and Frett if they would be willing to go to the police station to give voluntary statements concerning the events of the evening of S's injuries. They both agreed. Scott then transported the couple to the police station. Scott interviewed Frett first, then the defendant. Before the interview began, Scott advised the defendant of his *Miranda* rights,[5] and also read to him his rights from the waiver of rights form. Scott asked the defendant if he understood each one of the rights read to him; the defendant said that he did. The defend-

---

[5] In *Miranda* v. *Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the United States Supreme Court ruled that an individual who has been taken into custody or otherwise deprived of his freedom in any significant way "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."

"If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning." Id., 474.

ant initialed the form five times next to each *Miranda* right listed on the waiver of rights form, and signed the form at the bottom. At no time did the defendant request an attorney. Scott took the defendant's statement, read the statement back to him, and the defendant signed it as his own.

The defendant now argues that the trial court violated his constitutional rights in admitting the statement. The trial court denied the defendant's motion to suppress the statement because it found that the defendant's testimony that his request for an attorney was denied the day he gave his statement to the police was less credible than Scott's testimony.[6]

In a trial to the court, the trial court sits as the trier of fact; *Knock* v. *Knock,* 224 Conn. 776, 793, 621 A.2d 267 (1993); and the sole judge of the credibility of witnesses. In this capacity, "the trial court . . . is uniquely competent to determine the credibility and weight to be accorded to evidence, the scope of our review of the trial court's decision to accept or reject the defendant's . . . testimony is limited. After considering the totality of the record in the light most favorable to sustaining the trial court's factual conclusions, we will disturb the trial court's findings only if we determine that they are clearly erroneous." *Bieluch* v. *Bieluch,* 199 Conn. 550, 556, 509 A.2d 8 (1986). The trial court was in the best position to observe the witnesses, to determine their motivations for testifying, and to pass on the credibility of each witness. Scott's version of the events was supported by the evidence; we cannot con-

---

[6] The trial court ruled from the bench on whether the defendant's statement was admissible: "I find that as a matter of credibility [Scott's] statement was more credible for purposes of this motion, and that the state has proved—established it by at least a preponderance of the evidence. . . . I find for the state on this motion, and I find that the state has established by a preponderance of the evidence necessary elements, including the fact that [the defendant] did not request an attorney."

clude that the trial court's finding was clearly erroneous. Because the trial court found that the defendant did not request an attorney, there was no violation of the defendant's constitutional rights. Therefore, the trial court's admission of the statement was proper.

Finally, the defendant challenges the admission of the statement on the ground that his mental deficiency rendered the statement inadmissible as not knowingly and intelligently made. The state argues that the defendant's claim is not reviewable because the defendant failed to preserve the claim in the trial court, and did not appropriately provide an *Evans-Golding* analysis establishing his right to such review.

The defendant did not raise this claim before the trial court, and first addressed its reviewability in his reply brief. This claim has not been properly preserved for our review.

It is well established that generally this court will not review claims that were not distinctly raised in the trial court. *State* v. *Tillman,* 220 Conn. 487, 504, 600 A.2d 738 (1991), cert. denied, U.S. , 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992). A defendant may prevail on a claim of constitutional error not preserved at trial, however, if all the conditions of *Evans-Golding* are satisfied. *State* v. *Golding,* 213 Conn. 233, 239–240, 567 A.2d 823 (1989); *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). Here, the unpreserved claim was not claimed under an *Evans-Golding* analysis in the defendant's brief, but argued in his reply brief as a result of the state's anticipatory argument. The reply brief is not the proper vehicle in which to provide this court with the basis for our review under an *Evans-Golding* analysis. We, accordingly, decline to review the defendant's claim. Practice Book §§ 4183 and 4185; see *State* v. *Nelson,* 17 Conn. App. 556, 576, 555 A.2d 426 (1989) (refusing to review party's claim because party failed

to raise issue at trial and brief failed to argue claim was reviewable under *Evans*); *Board of Education* v. *Local 1282,* 31 Conn. App. 629, 633, 626 A.2d 1314, cert. granted on other grounds, 227 Conn. 909, 632 A.2d 688 (1993) (refusing to review party's argument that first appears in its reply brief), citing *Adolphson* v. *Zoning Board of Appeals,* 205 Conn. 703, 716, 535 A.2d 799 (1988) (only in most exceptional circumstances will appellate court consider claim that was not raised in trial court); *Fiddelman* v. *Redmon,* 31 Conn. App. 201, 213, 623 A.2d 1064, cert. denied, 226 Conn. 915, 628 A.2d 986 (1993) (criticizing practice whereby party receives unfavorable trial court decision and then attempts to impeach it for reasons known to party before or during proceeding); *Protter* v. *Brown Thompson & Co.,* 25 Conn. App. 360, 363–64 n.2, 593 A.2d 524 (1991) (refusing to review claim raised for first time in reply brief).

The judgment is affirmed.

In this opinion the other judges concurred.