### STATE OF CONNECTICUT *v.* STEVEN RICHARD ATKINSON

Superior Court                                          File No. CR970106375S

Geographical Area No. 13
at Enfield

Memorandum filed September 17, 1999

*John Malone*, supervising state's attorney, for the state.

*Peters & Peters*, for the defendant.

I

## INTRODUCTION

RUBINOW, J. Through a substitute information, the state has alleged that the defendant, Steven Richard Atkinson, committed the following crimes on or about August 24, 1997: count one, disorderly conduct in violation of General Statutes § 53a-182; count two, threatening in violation of General Statutes § 53a-62; count three, assault in the first degree in violation of General Statutes § 53a-59 (a) (3); and, count four, reckless

endangerment in the first degree in violation of General Statutes § 53a-63. The defendant entered pleas of not guilty to these charges, and voluntarily waived his right to a trial by jury.

The matter was heard as a bench trial, with evidence and arguments submitted on July 1, 2, and August 30, 1999. Both parties have been represented by able and experienced counsel throughout the course of the proceedings. The parties have submitted detailed and analytical trial briefs in support of the legal and factual claims they have presented to the court. The court has addressed the following claims.

The state asserts that the court is limited, under the circumstances of this bench trial, to consideration of only those lesser included offenses which have been specifically requested by the parties. The court finds this issue in favor of the defendant, who has submitted that the court is obliged to consider all applicable lesser included offenses in a trial without a jury. The defendant acknowledges that threatening under § 53a-62 (a) (1) is not a lesser included crime, but a separate offense, within the evidence adduced by the state in this matter. The parties agree that assault in the third degree, General Statutes § 53a-61 (a) (2) is a lesser included offense of assault in the first degree, by way of § 53a-59 (a) (3). The defendant also argues that reckless endangerment in the first degree, § 53a-63, is a lesser included offense of assault in the first degree, within the meaning of § 53a-59 (a) (3). The court finds this issue in favor of the defendant. The defendant further submits that the charge of disorderly conduct in violation of § 53a-182, constitutes a lesser included offense of threatening, § 53a-62, reckless endangerment in the first degree, § 53a-63 and/or assault in the first degree, § 53a-59 (a) (3). The court finds this issue in favor of the state. The state asserts that in considering the evidence which supports the charge of violating § 53a-59 (a) (3), the

element related to the defendant's state of mind may be satisfied with equal force by evidence that the defendant acted "intentionally," as well as by evidence that the defendant acted "recklessly under circumstances evincing an extreme indifference to human life." The court finds this issue in favor of the defendant, within the context of this case. The defendant also claims that the evidence presented in this case fails to support the state's contention that his actions caused "serious physical injury" to the victim, within the meaning of the Penal Code. The court finds this issue in favor of the state.

## II

## FACTUAL BASIS

In reaching its decision in this matter, the court has reviewed the documentary evidence submitted by the parties as well as the testimony received from witnesses Kimberly Atkinson, Anastasia Rogers, Beth Van Alstyne, David Driscoll, Charles Bizilj, Michael Rotandaro and the defendant.

From the evidence presented, the court finds the following facts. On August 24, 1997, the defendant resided with his wife, Kimberly Atkinson (victim), at 83 Windsor Street in Enfield. The victim had occupied that two-story single-family dwelling for approximately one year prior to her marriage to the defendant. The defendant and the victim had occupied this house together since their marriage approximately three years earlier. They lived there with two of the defendant's children, Amanda and Patrick, who were then teenagers, and with the victim's child, Anastasia Rogers, who was then eleven years old.[1] Recently, the quality of the

---

[1] Anastasia, called "Stacey," was the product of the victim's prior marriage. Amanda and Patrick were the defendant's children from a prior marriage.

marriage between the defendant and the victim had deteriorated markedly. Discord followed from Patrick's behavioral difficulties at school and at home, and from his refusal to return to Enfield from his paternal grandparent's home in Hebron, where he had spent time during that summer.

Between approximately 6:30 and 7 p.m., the parties became embroiled in a domestic argument concerning Patrick's current living arrangements and the defendant's request that Stacey spend a few days at a neighbor's house. The argument took place in the first floor living room at the Windsor Street house. At that time, Stacey was also in the house, occupying a bedroom on the second floor. The dispute between the defendant and the victim continued for approximately three hours, during which time they discussed the causes of the breakdown of their marriage, available methods for dissolving the marriage and distributing marital property, the house at 83 Windsor Street and marital debt, and the apparent inefficacy of the defendant's efforts to improve Patrick's negative behavior patterns.

Despite the subject matter, the tenor of the argument remained mild for a substantial period of the time, with the defendant and the victim seated upon separate pieces of furniture in the living room. Shortly before 10 p.m., the victim stated that she would not allow Patrick to return to live at the Windsor Street house. The defendant tendered proposals for modifying their living arrangements to accommodate Patrick, but the victim resisted these entreaties. Upon her refusal, the defendant walked out of the living room, entered the adjacent foyer, then turned to the victim and, showing hatred in his facial expression, told her he wanted her to die. The defendant then shouted at the victim, "You always have to have everything your way, you bitch, I hate you." The defendant then repeated, "I hate you, you bitch," in a loud voice as he moved rapidly from

the foyer back to the living room toward the victim, where she remained seated on a couch, all in an effort to place her in fear of imminent serious physical injury. The defendant expressed anger and frustration as he moved the short distance to reach the victim across the room. The defendant proclaimed these invectives for the purpose of annoying and alarming the victim; these behaviors further placed the victim in fear of serious physical injury. The victim was able to scream in fear just before the defendant reached her, grabbed her, placed his hands around her throat and choked her for a few moments as he pushed the victim down sideways onto the couch. Stacey immediately responded to her mother's scream and came downstairs into the living room during the assault. Within moments, as Stacey cried out for him to stop, the defendant responded by ceasing his assault and removing his hands from the victim's throat. The victim, who had "blacked out" temporarily, revived when she heard her daughter crying.

The defendant then called the police, requesting their assistance at the scene. The victim was able to speak to the dispatcher. The victim was also able to converse competently with police and ambulance personnel who arrived at 83 Windsor Street a few minutes before 10 p.m. Except for some red marks on the victim's throat and slight swelling in this area, no obvious signs of trauma or shock were present upon examination by Beth Van Alstyne, a responding emergency medical technician. Van Alstyne also noted that the victim's vital signs were normal. As the victim was transported for hospital assessment, she received supplemental oxygen, but no physical stabilization or further life support was required.

Emergency room examination by Charles Bizilj, a physician at Johnson Memorial Hospital, revealed a mottled pattern of erythema or bruising on the front

of the victim's neck, but no other significant swelling, physical or clinical findings were noted. An X ray examination of the neck was negative. The victim's loss of consciousness as the result of the incident was due to anoxia, or temporary loss of oxygen to the brain. The defendant's assault had caused a serious impairment of the victim's health by interference, and brief, but serious, compression of the victim's carotid arteries, bodily organs essential to her breathing functions. Bizilj prescribed ibuprofen for relief of the victim's pain and such swelling that might occur in the neck. The victim improved, and was discharged from hospital care at approximately 2:15 a.m. on August 25, 1997. The red marks that were noted on the victim's neck lasted a little over one week.

## III

## CLAIMS OF LAW

### A

### Lesser Included Offenses

The state claims that in considering this matter, the court may address only those lesser included offenses that have been the subject of requests by the parties. The court concurs with the defendant, finding that the state has had effective notice of all applicable lesser included offenses, and concluding that it has an inherent obligation to consider these charges in the context of this bench trial.

It is axiomatic that an accused is required to defend only against the charges brought forward by the state, and that the information serves the crucial function of alerting the defendant to the nature of the allegations to be pursued at trial. Notice of the crimes charged in the information is thus considered to be a foundation for the parties' notice of all lesser included offenses in

addition to those specifically charged in the information. *State* v. *Guess*, 39 Conn. App. 224, 238, 665 A.2d 126, cert. denied, 235 Conn. 924, 666 A.2d 1187 (1995).

Our Supreme Court first fully explicated this rule in the landmark case of *State* v. *Whistnant*, 179 Conn. 576, 427 A.2d 414 (1980). *Whistnant* established that if the evidence presented in a criminal case would support a conviction of a lesser included offense, then that "lesser offense which *could* be found in the indictment, information or bill of particulars [is] a proper subject for consideration by the trier of fact." (Emphasis added.) Id., 585. The principles of *Whistnant* are most frequently considered in the context of trials to the jury.[2] There, it is acknowledged that a defendant is entitled to have the jury instructed about a lesser included offense only if four conditions have been met: "(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information . . . without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." (Internal quotation marks omitted.) *State* v. *Abdalaziz*, 248 Conn. 430, 435, 729 A.2d 725 (1999).

The first prong of the *Whistnant* test is based in part upon the fundamental fairness of ensuring that the

---

[2] As the Supreme Court has commented recently: "It is well settled that a defendant is entitled, under certain circumstances, *to a jury instruction* on lesser included offenses." (Emphasis added.) *State* v. *Abdalaziz*, 248 Conn. 430, 434, 729 A.2d 725 (1999).

parties, and the court responsible for instructing a jury, are each provided with adequate notice of the charges that may be established through the proof adduced at trial. "The constitutionality of instructing on lesser included offenses is grounded on the premise that where one or more offenses are lesser than and included within the crime charged, notice of the crime charged includes notice of all lesser included offenses. . . . This notice permits *each party* to prepare a case properly, each cognizant of its burden of proof." (Emphasis added; internal quotation marks omitted.) *State* v. *Coleman*, 242 Conn. 523, 532, 700 A.2d 14 (1997); see also *State* v. *Chance*, 236 Conn. 31, 56, 671 A.2d 323 (1996). Accordingly, in this bench trial, the court considered the lesser included offenses supported by the evidence in the case.

As to the lesser included offenses to be considered in the present case, the state has specifically charged the defendant with violating § 53a-59 (a) (3). The parties have agreed that should the court find the defendant not guilty of this offense, it must consider the lesser included offense of assault in the third degree in violation of § 53a-61 (a) (2). The court concurs. See *State* v. *Abdalaziz*, supra, 248 Conn. 434–35. Both of these charges require the court to consider whether the defendant acted recklessly under the circumstances of the present case, and whether, thereby, the defendant caused the victim to sustain serious physical injury.

The court has considered the defendant's claim that the charge of reckless endangerment in the first degree, § 53a-63, is a lesser included offense of assault in the first degree, within the meaning of § 53a-59 (a) (3). A careful consideration of the legislative language in these statutory sections leads the court to conclude that each requires the state to prove reckless conduct on the part of the defendant, with extreme indifference to human life, which creates a risk of serious physical injury to

another person; that risk must be perfected to support a conviction under § 53a-59 (a) (3), where the state must also prove the additional element of conduct which creates a risk of death to another person. At law, therefore, the court finds this issue in favor of the defendant. See id. Under the circumstances of the present case, however, as discussed later in this opinion, the court is not required to assess the application of the facts presented here to the elements of § 53a-63, as the court has concluded that there has been insufficient evidence provided from which it reasonably could conclude that the defendant acted "with extreme indifference to human life" in causing injury to the victim.

The court has also considered the relation between reckless endangerment in the first degree, § 53a-63 as charged, and reckless endangerment in the second degree, General Statutes § 53a-64. As a matter of law, § 53a-63 cannot be violated without first violating § 53a-64. Section 53a-63 defines reckless endangerment in the first degree as occurring when "with extreme indifference to human life, [a person] recklessly engages in conduct which creates a risk of serious physicial injury to another person." Section 53a-64 defines reckless endangerment in the second degree as occurring when a person "recklessly engages in conduct which creates a risk of physical injury to another person." Thus, it is not possible to commit the offense of reckless endangerment in the first degree in violation of § 53a-63 without having first committed the lesser offense of reckless endangerment in the second degree in violation of § 53a-64.

The defendant also claims that the charge of disorderly conduct in violation of § 53a-182, constitutes a lesser included offense of threatening, § 53a-62; reckless endangerment in the first degree, § 53a-63; and/or assault in the first degree, § 53a-59 (a) (3). The court

finds that the element of intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk of inconvenience, annoyance or alarm, is not present in §§ 53a-62, 53a-63, or § 53a-59 (a) (3). The court further finds that the element of annoying or interfering with another person by offensive conduct is not present in §§ 53a-62, 53a-63, or § 53a-59 (a) (3). Accordingly, it is possible to have committed the offense of disorderly conduct in violation of § 53a-182 without first having committed either threatening, reckless endangerment in the first degree, or assault in the first degree. As he has failed to establish that disorderly conduct fulfills the second prong of *Whistnant*, disorderly conduct cannot properly be considered a lesser offense of those other charges, notwithstanding the defendant's claim. *State v. Abdalaziz*, supra, 248 Conn. 435.

## B

### State of Mind Required for Conviction of Assault in the First Degree under § 53a-59 (a) (3)

The parties here have agreed that § 53a-61 (a) (2) is a lesser included offense of § 53a-59 (a) (3), and the court concurs. The state urges, however, that in considering whether it has proved, beyond a reasonable doubt, that the defendant committed assault in the first degree under § 53a-59 (a) (3), the court is bound to assume that if the defendant acted intentionally[3] when assaulting the victim, such intention would satisfy the statutory requirement of evidence that the defendant acted recklessly under circumstances evincing an extreme indifference to human life. Under the facts as presented in this particular case, the court finds insufficient grounds for accepting the state's proposition.

---

[3] General Statutes § 53a-3 (11) provides: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

As he has been charged with violating § 53a-59 (a) (3), the court is required to determine whether the state has proved, beyond a reasonable doubt, that under circumstances evincing an extreme indifference to human life, the defendant recklessly engaged in conduct which created a risk of death to the victim, and thereby caused her to suffer serious physical injury. Initially, the court is thus obligated to consider whether the state's proof established that the defendant acted "with extreme indifference to human life." It has been noted that "[n]o definition of 'extreme indifference to human life' is found in the penal code, title 53a of the General Statutes." *State* v. *Bunker*, 27 Conn. App. 322, 326, 606 A.2d 30 (1992).[4] When evaluating allegations of assault in the first degree under this subsection, our courts have held that it is appropriate for the trier of fact to utilize a definition of "extreme indifference" which is set forth in the context of "recklessness." Id., 327; see also *State* v. *Spates*, 176 Conn. 227, 236–37, 405 A.2d 656 (1978), cert. denied, 440 U.S. 922, 99 S. Ct. 1248, 59 L. Ed. 2d 475 (1979). Here, the court has adopted the connotation of the "extreme indifference" factor set forth in *Bunker*; the court, therefore, acknowledges that "the aggravated form of recklessness required to support a conviction under § 53a-59 (a) (3)"; *State* v. *Bunker*, supra, 327; "is one step further toward culpability than ordinary recklessness." Id. In construing the applicability of the statutory definition of "recklessly" set forth in General Statutes § 53a-3 (13) to the facts of the present case,[5]

---

[4] The preliminary annotation to title 53a of the General Statutes acknowledges this deficit, and provides the following relevant precis: "Although title has no definition of 'extreme indifference to human life,' extensive charge on meaning of 'recklessly' *coupled with the evidence* adequately indicate nature of acts qualifying." (Emphasis added.) General Statutes title 53a, annotation citing, inter alia, *State* v. *Delossantos*, 211 Conn. 258, 275, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989).

[5] General Statutes § 53a-3 (13) defines the term "recklessly" as follows: "A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will

the court also utilized the ordinary meaning of the term "gross deviation," as is specified in *State* v. *Bunker*, supra, 327–28.[6]

While Connecticut has not established a "minimum quantum of evidence necessary to sustain a conviction under § 53a-59 (a) (3)"; id., 333; it is clear that the proof must establish, beyond a reasonable doubt, "that the defendant's conduct was not merely reckless, but also evinced an extreme indifference to human life." Id.[7] In

occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a *gross deviation* from the standard of conduct that a reasonable person would observe in the situation . . . ." (Emphasis added.)

[6] "The term 'gross deviation' as it appears in § 53a-3 (13) is not used in any way other than its ordinary meaning. See *State* v. *Salz*, 26 Conn. App. 448, 455, 602 A.2d 594 (1992) [aff'd, 226 Conn. 20, 627 A.2d 862 (1993)]." *State* v. *Bunker*, supra, 27 Conn. App. 329.

[7] Our records have great experience in appellate review of convictions for violation of § 53a-59 (a) (3). The overwhelming majority of these cases involve the use of instruments during the assault; injuries that are lasting, repeated or require curative medical attention or, egregious violence against children. See, e.g., *State* v. *Abdalaziz*, supra, 248 Conn. 433 (five shots fired at victim from distance of six to nine feet, in course of argument, with four bullets causing serious injury); *State* v. *Miranda*, 245 Conn. 209, 213–14, 715 A.2d 680 (1998) (four month old child subjected, as result of defendant's failure to intervene, to multiple rib fractures, two skull fractures, brachial plexus injury, rectal tear, and bilateral subconjunctival nasal hemorrhages); *State* v. *Dash*, 242 Conn. 143, 145, 698 A.2d 297 (1997) (robbery victim sustained gunshot to back during struggle with defendant); *State* v. *Giguere*, 184 Conn. 400, 401, 439 A.2d 1040 (1981) (robbery victim suffers severe beating about head, face, shoulders and body with several stab wounds to head, broken jaw, fractured fingers and fractured teeth); *State* v. *Otto*, 50 Conn. App. 1, 17, 717 A.2d 775 (1998), cert. denied, 247 Conn. 927, 719 A.2d 1171 (1990) (rapid operation of motor vehicle onto sidewalk striking two pedestrians); *State* v. *Chace*, 43 Conn. App. 205, 206–207, 682 A.2d 143 (1996) (use of knife to stab two victims); *State* v. *Casado*, 42 Conn. App. 371, 373, 680 A.2d 981, cert. denied, 239 Conn. 920, 682 A.2d 1006 (1996) (assault to four year old child using belt or stick causing injuries to left eye, back, stomach, chest, leg and pancreas, and burning of child's fingers with cigarettes); *State* v. *Huckabee*, 41 Conn. App. 565, 572, 677 A.2d 452, cert. denied, 239 Conn. 903, 682 A.2d 1009 (1996) (discharge of firearm into crowd gathering outside nightclub, causing single bullet to pass through victim's leg with permanent physical scarring); *State* v. *Williams*, 39 Conn. App. 18, 20, 24,

Connecticut, a charge of assault in the first degree can be supported by evidence of "a single, instantaneous, reflexive act during an extremely brief encounter . . . 'evincing extreme indifference to human life . . . .' " Id., 332. This act may occur in the course of a domestic dispute, or between strangers.

As Justice David Borden of our Supreme Court has noted, in construing the statutory definitions of "intentional" and "reckless" actions, the court must remain aware of the anomaly that currently exists in Connecti-

---

644 A.2d 436 (1995), rev'd on other grounds, 237 Conn. 748, 679 A.2d 920 (1996) (eight blows delivered to domestic violence victim's head with baseball bat, causing bat to break and causing near fatal injuries, described by court as "brutal attack perpetuated by the defendant on the victim"); *State* v. *Alford*, 37 Conn. App. 180, 181, 655 A.2d 782, cert. denied, 234 Conn. 914, 660 A.2d 357 (1995) (two year old victim's godmother uses coat hanger, belt and key chain strap to inflict multiple abrasions, lacerations, bruises, missing teeth, subdural hematoma, fracture of lower jaw and multiple trauma); *State* v. *Laccone*, 37 Conn. App. 21, 22, 654 A.2d 805 (1995), appeal dismissed, 235 Conn. 746, 669 A.2d 1213 (1996) (young child subjected by mother's boyfriend to multiple trauma causing skull fracture, brain contusions, extensive bleeding under scalp and face); *State* v. *Ramos*, 36 Conn. App. 831, 832, 661 A.2d 606, cert. denied, 235 Conn. 902, 665 A.2d 905 (1995) (gunshot to uncooperative robbery victim's head; victim survived assault); *State* v. *Jones*, 34 Conn. App. 807, 809, 644 A.2d 355, cert. denied, 231 Conn. 909, 608 A.2d 158 (1994) (severe, violent shaking of six month old child and sudden impact with hard surface by mother's boyfriend causes child to sustain severe cerebral injury with severe brain damage causing blindness, motor impairment and seizures); *State* v. *Coleman*, 35 Conn. App. 279, 281, 646 A.2d 213, cert. denied, 231 Conn. 928, 648 A.2d 879 (1994) (multiple knife wounds to victim's hand and blows to face sustained during robbery attempt); *State* v. *Dickerson*, 28 Conn. App. 290, 291, 612 A.2d 769 (1992) (pedestrian exposed to gunfire from distance, receiving shot in left foot requiring amputation of great toe); *State* v. *Rumore*, 28 Conn. App. 402, 405–406, 412, 613 A.2d 1328, cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992) (robbery and assault of person over age of sixty, with loss of consciousness caused by blow to face, grabbing victim by ankles and causing her to fall to floor; resulting in deep laceration to back of her head, abrasions to her face and back, and partial tear of nipple of her left breast); *State* v. *Bunker*, supra, 27 Conn. App. 332–33 (assault with beer bottle with sufficient force to shatter bottle and lacerate facial nerves, arteries and veins, also causing fracture of bone near base of victim's brain).

cut jurisprudence, according to which, although a defendant's homicidal conduct would not permit a rational inference of a lesser state of mind than intent to kill, our law nonetheless permits the trier of fact to base its conviction on an offense requiring only that the defendant acted with a reckless state of mind. *State v. Abdalaziz*, supra, 248 Conn. 453 (*Borden, J.*, concurring). "Unlike intention, which requires that the actor's conscious objective [be] to cause [the] result or to engage in [the] conduct; General Statutes § 53a-3 (11); [a] person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense *when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists.* The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . . General Statutes § 53-3 (13). . . . The concept embodied by the first sentence is that, *unlike intention,* which requires a conscious objective to bring about the proscribed result, recklessness requires an awareness and conscious disregard of the proscribed substantial and unjustifiable risk. Of course, when someone intentionally kills someone else he acts grossly inconsistent with what a reasonable person would do in the same situation. That alone, however, is an insufficient basis on which a jury reasonably can find that he *also* acted with the kind of conscious disregard required by the definition of recklessness." (Emphasis in original; internal quotation marks omitted.) *State v. Abdalaziz*, supra, 455–56 (*Borden, J.*, concurring).[8]

---

[8] Justice Borden cautions that although our law presently affirms a finding that an accused acted recklessly when the evidence would also support a finding of intentional conduct, such conclusions may be "fanciful." *State v. Abdalaziz*, supra, 248 Conn. 456 (*Borden, J.*, concurring). Thus, he proposes that "[e]ventually, we should eliminate this anomaly in our law. It only serves to permit a jury to render a verdict based on something other than a rational view of the evidence." Id., 457.

Focusing upon on a "rational view of the evidence" presented in this case, the court finds an insufficient basis here for accepting the state's proposition that when the defendant acted with the kind of conscious disregard required by the definition of recklessness, he also acted with extreme indifference to human life. The state submits that the defendant's use of invectives such as "bitch" immediately prior to and during the assault, taken together with the defendant's facial expression, his verbal expressions of hatred toward the victim and his stated intention to harm the victim, all establish competent evidence of the defendant's extreme indifference to human life as contemplated by § 53a-59 (a) (3). The court is not persuaded that such evidence adequately indicates the nature of acts qualifying for the application of the statutes at issue. Both the charges of assault in the first degree, § 53a-59 (a) (3),[9] and reckless endangerment in the first degree, § 53a-63, require a finding that the defendant, under the totality of the facts as presented in this case, acted "recklessly" and with "extreme indifference to human life." The circumstances of the present case, with a momentary use of the defendant's hands in a choking motion about the victim's neck, without a weapon or instrument other than his hands and arms, without causing permanent disfigurement or lasting physical injury to the victim, notwithstanding her brief loss of consciousness, simply do not allow the court to conclude that the state has proved, beyond a reasonable doubt, the critical factor of "extreme indifference to human life" that would support a finding of guilty under either assault in the first degree, § 53a-59 (a) (3), or reckless endangerment in the first degree, § 53a-63.

## C

### Serious Physical Injury

The defendant argues that the evidence in the present case is insufficient to establish a "serious physical

---

[9] See footnote 7 of this opinion.

injury" within the meaning of Connecticut's penal statutes. The state counters that the victim's loss of consciousness, however brief, constitutes adequate evidence that the defendant's conduct caused her to be subject to both a "substantial risk of death" and to a "serious impairment of health or serious loss or impairment of the function of any bodily organ," within the meaning of § 53a-3 (4). The court finds this issue in favor of the state.

Whether a victim has suffered serious physical injury can be proved through direct or circumstantial evidence, or through expert testimony such as that provided by Bizilj in the present case. *State* v. *Rumore*, 28 Conn. App. 402, 414, 613 A.2d 1328, cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992). To constitute a serious physical injury, impairment of a bodily organ need not be permanent. Id., 415. It may be inferred that a loss of consciousness has been caused by a serious impairment of a bodily organ, through an impairment of the function of the brain, known by common experience to be an organ of the body requiring the use of oxygen to sustain its operation and activity. Id., 414–15. Our courts have acknowledged " 'the difficulty of drawing a precise line as to where "physical injury" leaves off and "serious physical injury" begins' . . . *State* v. *Miller*, 202 Conn. 463, 489, 522 A.2d 249 (1987)." *State* v. *Rumore*, supra, 415. Appreciating this "difficulty," and applying the principles set forth in *Rumore*, the court finds that a loss of consciousness, however brief, may constitute a serious physical injury as contemplated by § 53a-3 (4).

## IV

## CONCLUSIONS

As to count one of the substitute information, the court finds that the state has proved, beyond a reasonable doubt, that on August 24, 1997, the defendant

shouted acrimonious invectives at the victim, with the intent to cause her inconvenience, annoyance or alarm, and that through this offensive conduct he did annoy and interfere with her, and therefore finds him guilty of the offense of disorderly conduct in violation of § 53a-182 (a) (2).

As to count two of the substitute information, the court finds that the state has proved, beyond a reasonable doubt, that on August 24, 1997, the defendant, by physical threat, intentionally placed the victim in fear of imminent serious physical injury, and therefore finds him guilty of the offense of threatening, in violation of § 53a-62 (a) (1).

As to count three of the substitute information, the court finds that the state has failed to prove, beyond a reasonable doubt, the elements of assault in the first degree, in that the state has failed to provide sufficient evidence that the defendant acted "with extreme indifference to human life" on August 24, 1997. *State* v. *Abdalaziz*, supra, 248 Conn. 343–45. The court, therefore, finds the defendant not guilty of violating § 53a-59 (a) (3).

As to the lesser included offense of assault in the third degree, the court finds that the state has proved, beyond a reasonable doubt, that by recklessly placing his hands around the victim's throat on August 24, 1997, the defendant caused her to lose consciousness for a brief period of time, constituting a serious physical injury, and, therefore, finds him guilty of the offense of assault in the third degree in violation of § 53a-61 (a) (2).

As to count four of the substitute information, the court finds that the state has failed to prove, beyond a reasonable doubt, the elements of reckless endangerment in the first degree, in that the state has failed to provide sufficient evidence that the defendant acted

with "extreme indifference to human life" on August 24, 1997. *State* v. *Abdalaziz*, supra, 248 Conn. 443. The court, therefore, finds the defendant not guilty of violating § 53a-63.

As to the lesser included offense of reckless endangerment in the second degree, the court finds that the state has proved, beyond a reasonable doubt, that in recklessly placing his hands around the victim's throat on August 24, 1997, and by causing her to lose consciousness for a brief period of time, constituting a serious physical injury, the defendant committed reckless endangerment in the second degree in violation of § 53a-64, and, therefore, finds him guilty of this offense.

Having found that the state has proved, beyond a reasonable doubt, that the defendant is guilty of violating both § 53a-61 (a) (2) and § 53a-64, the court has considered the relation of these two statutory provisions. The court finds that the elements of § 53a-64 are so consistent with the elements of § 53a-61 (a) (2) that it is precluded by the principles of double jeopardy from entering a finding of guilty as to both charges.

The constitutional guarantee in the double jeopardy clause prohibits multiple punishments for the same offense in a single trial. *State* v. *Nixon*, 231 Conn. 545, 549–50, 651 A.2d 1264 (1995). The renowned *Blockburger* test is traditionally applied when a court is called upon to determine whether two statutes criminalize the same offense: " '[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)." *State* v. *Nixon*, supra, 550–51.

The court has utilized the *Blockburger* test in assessing the elements of § 53a-61 (a) (2) and § 53a-64. Section 53a-61 (a) (2) defines assault in the third degree as occurring when a person "recklessly causes serious physical injury to another person." Section 53a-64 defines reckless endangerment in the second degree as occurring when a person "recklessly engages in conduct which creates a risk of physical injury to another person." Section 53a-64 does not require proof of any fact not necessary for proof of § 53a-61 (a) (2). For constitutional purposes, therefore, § 53a-61 (a) (2) merges with § 53a-64. *State* v. *Cooke*, 42 Conn. App. 790, 802, 682 A.2d 513 (1996); compare *State* v. *Smart*, 37 Conn. App. 360, 370–71, 656 A.2d 677, cert. denied, 233 Conn. 914, 659 A.2d 187 (1995) (offenses of possession of narcotics with intent to sell and sale of narcotics each contain element that other does not). Accordingly, as the defendant has been found guilty of the lesser included offense of § 53a-61 (a) (2), the court finds the defendant guilty of the lesser included offense of § 53a-64, but declines to impose a sentence for this charge. *State* v. *Freeney*, 228 Conn. 582, 588–89, 637 A.2d 1088 (1994); see also *State* v. *Little*, 54 Conn. App. 580, 585–87, 738 A.2d 195 (1999).