STATE OF CONNECTICUT *v.* TERRANCE NEWTON
(AC 18231)

Schaller, Hennessy and Zarella, Js.

508

Argued March 30—officially released August 22, 2000

*Mark Diamond*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Elpedio Vitale*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Terrance Newton, appeals from the judgment of conviction, rendered after a jury trial, of arson in the first degree in violation of General Statutes §§ 53a-8 and 53a-111 (a) (2), arson in the first degree in violation of General Statutes §§ 53a-111 (a) (4) and 53a-8 and conspiracy to commit arson in the first degree in violation of General Statutes §§ 53a-48 and 53a-111 (a) (4). On appeal, the defendant claims that the trial court improperly (1) denied his motion for a new trial, (2) denied his motion for a judgment of acquittal due to the insufficiency of evidence, (3) admitted a statement made by him as an admission of a party opponent, (4) violated his right of confrontation and (5) denied his motion for a speedy trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On October 23, 1996, an unoccupied house located at 16 Clover Place in New Haven was set on fire. Earlier that morning, Katherine Hutchings observed the defendant and Rufus Spearman together carrying a large bucket or jug between the houses located at 16 and 18 Clover Place. When Hutchings asked them what they were doing, she received no response. While returning from shopping, Hutchings heard a "big boom." She rounded the corner onto Clover Place and saw the fire at 16 Clover Place. She also saw the defendant and Spearman running away and noticed that the defendant's coat was on fire. The defendant shed the coat and continued running. As Hutchings continued down Clover Place, she passed the defendant's coat as it hung smoldering on a fence.

Edith Hunter, who lived at 18 Clover Place, also heard a "big boom." Hunter ran from her kitchen to her front porch and saw the defendant stumbling and running off the porch of 16 Clover Place wearing a smoldering coat. Around that time, Napoleon Gunn, an off-duty firefighter, noticed smoke billowing from the roof of the house at 16 Clover Place. Gunn shouted to a passerby to call 911 as he attempted to enter the burning house. The New Haven fire department responded immediately and when Lieutenant James Robinson arrived, he found a "tremendous volume of fire" that not only engulfed the house at 16 Clover Place, but also ignited the home next door. Robinson believed that the sheer volume of the fire in such a short period of time indicated that it was the work of an arsonist. He also testified that a fire fueled by an accelerant posed an increased risk of injury to firefighters because it causes the fire to burn hotter and faster.

Meanwhile, firefighter Michael Mineri of the central headquarters firehouse was driving an aerial tower truck to the fire when his truck was struck by a motorist.

The truck veered onto a sidewalk and struck a pedestrian. Mineri injured his hand and his back and had to be taken to a hospital. The collision also caused James Stacey, a firefighter and passenger in the fire truck, to bounce off the front windshield and to be taken to the hospital as well.

The firefighters who went into the burning house detected a strong odor of gasoline, despite the fact that they were wearing air masks. The firefighters fought the fire until one of them fell through the floor. After the firefighters rescued the one who had fallen, they tried to retreat and realized that the fire had surrounded them. They were able to escape only after a second group of firefighters came up to the second floor to rescue them.

New Haven Fire Marshal Frank Dellamura also responded to the fire. He discovered four or five areas where gasoline had been poured but did not ignite, which was probably because the mixture of gasoline to available oxygen was too rich. In other rooms, Dellamura found six or seven plastic milk containers that were partially melted with scorch marks near them. Dellamura opined that the fire was the result of an arsonist who had attempted to cause an explosion and to burn the house down. Dellamura also opined that because the fire originated in several areas, it must have been set by more than one person.

I

The defendant claims first that the court improperly denied his motion for a new trial because of newly discovered evidence that Hutchings lied in court when she identified the defendant. The defendant's motion stated: "Pursuant to Connecticut Practice Book § 902[1]

---

[1] At the time the defendant filed his motion, Practice Book § 42-53 had replaced § 902. Practice Book § 42-53 provides: "Motion for New Trial; In General. (a) Upon motion of the defendant, the judicial authority may grant a new trial if it is required in the interests of justice. Unless the defendant's noncompliance with these rules or with other requirements of law bars his

[now § 42-53] and *State* v. *Myers*, 242 Conn. 125, 698 A.2d 823 (1997), Defendant hereby requests a new trial based on the discovery of new evidence."[2] The state argues that the defendant's motion for a new trial was not cognizable under the rule of practice cited by the defendant[3] and that it was untimely.[4]

The court, after hearing the arguments from counsel, denied the motion. The court did not address the state's

---

or her asserting the error, the judicial authority shall grant the motion:

"(1) For an error by reason of which the defendant is constitutionally entitled to a new trial; or

"(2) For any other error which the defendant can establish was materially injurious to him or her.

"(b) If the trial was by the court and without a jury, the judicial authority, with the defendant's consent and instead of granting a new trial, may vacate any judgment entered, receive additional evidence, and direct the entry of a new judgment."

[2] The new evidence was that Pricilla Lacey, a friend of Hutchings, who placed the defendant at the scene of the arson, was told by Hutchings that she was home in bed when the fire had occurred and that the reason she had testified that the defendant was at the arson scene was to collect the reward offered in the case.

[3] Practice Book § 42-53 provides for the granting of a motion for a new trial in the interests of justice, for constitutional error or for other materially injurious error. "A motion for a new trial under Practice Book § 902 [now § 42-53] is limited to trial errors, and cannot be based upon newly discovered evidence. . . . The defendant must bring a petition under § 904 [now § 42-55] if he wishes to seek a new trial based upon newly discovered evidence." *State* v. *Jones*, 205 Conn. 723, 730, 535 A.2d 808 (1988).

The defendant argues that although the motion stated that it was made pursuant to the Practice Book § 902, because it was made on the basis of the discovery of new evidence and that was what he had argued before the court, the motion was in effect made pursuant to Practice Book § 904, now § 42-55, which governs motions for a new trial based on newly discovered evidence. Practice Book § 42-55 provides in relevant part: "A request for a new trial on the ground of newly discovered evidence shall be called a petition for a new trial and shall be brought in accordance with General Statutes § 52-270. . . ."

[4] In accordance with Practice Book § 42-54, a motion for a new trial, "[u]nless otherwise permitted by the judicial authority in the interests of justice . . . shall be made within five days after a verdict or finding of guilty or within any further time the judicial authority allows during the five-day period." The defendant argues that motions made pursuant to Practice Book § 42-55; see footnote 3; may be made within three years of judgment pursuant to General Statutes § 52-582, and, therefore, his motion was timely.

arguments that the motion for a new trial was untimely and had been brought under an incorrect section of the Practice Book, but rather decided that on the basis of the arguments presented it could not tell whether the evidence could not have been discovered earlier. In addition, there was other evidence that was sufficient to place the defendant at the scene.

"[O]ur standard of review of the trial court's denial of a motion for a new trial is limited to a determination of whether, by such denial, the court abused its discretion. *State* v. *Rothenberg*, 195 Conn. 253, 264, 487 A.2d 545 (1985). *State* v. *Leavitt*, 8 Conn. App. 517, 524, 513 A.2d 744, cert. denied, 201 Conn. 810, 516 A.2d 886 (1986). As a reviewing court considering the trial court's decision granting or denying a motion for a new trial, we must be mindful of the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided." (Internal quotation marks omitted.) *Munson* v. *United Technologies Corp.*, 28 Conn. App. 184, 194–95, 609 A.2d 1066 (1992).

"A party is entitled to a new trial on the ground of newly discovered evidence if such evidence is, in fact, newly discovered, will be material to the issue on a new trial, could not have been discovered and produced, on the trial which was had, by the exercise of due diligence, is not merely cumulative and is likely to produce a different result. . . . New trials are not granted upon newly discovered evidence which discredits a witness unless the evidence is so vital to the issues and so strong and convincing that a new trial would probably produce a different result. . . . The basic question which the trial court has to decide is whether upon all the evidence an injustice had been done. In deciding this question, the court has the exercise of a sound legal discretion, and its action cannot be disturbed unless this discretion has been abused." (Citations omitted.)

*Turner* v. *Scanlon,* 146 Conn. 149, 163, 148 A.2d 334 (1959).

The court was not persuaded that the proffered evidence could not have been discovered prior to or during trial. Moreover, there was other identification evidence placing the defendant at the scene making it unlikely that a new trial would produce a different result. Under the circumstances as presented here, we can not conclude that the court abused its discretion in denying the defendant's motion for a new trial.

## II

The defendant next claims that the court improperly denied his motion for judgment of acquittal.[5] Specifically, he makes four separate claims that at the close of the prosecutor's case there was insufficient evidence presented to prove him guilty of the crimes charged beyond a reasonable doubt.

"When reviewing a sufficiency of the evidence claim, we first examine the evidence in the light most favorable to upholding the jury's verdict." (Internal quotation marks omitted.) *State* v. *Jones,* 34 Conn. App. 807, 811, 644 A.2d 355, cert. denied, 231 Conn. 909, 648 A.2d 158 (1994). The test is whether the jury "reasonably could have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a rea-

---

[5] After the state had rested at trial, counsel for the defendant stated, "Your Honor, I just have the standard motion for judgment of acquittal . . . no reasonable juror could come to the conclusion or come to a verdict of guilty. So I would simply stand on that, and leave it to the court." The court stated that the motion was denied without further comment.

In his brief, the defendant states that he had moved for a judgment of acquittal pursuant to Practice Book § 42-51, which governs motions for acquittal on a verdict of guilty. The proper motion under the circumstances should have been a motion for a judgment of acquittal at the close of the prosecution's case pursuant to Practice Book § 42-41. Because the motion addressed to the court was the "standard motion for judgment of acquittal," we will treat the statement in the defendant's brief as transcription error.

sonable doubt." (Internal quotation marks omitted.) Id.; see also *State* v. *Diaz*, 237 Conn. 518, 541, 679 A.2d 902 (1996). Whether the evidence is wholly or partially circumstantial does not diminish its probative force. *State* v. *Jones*, supra, 811. We have repeatedly held that the inquiry by this court "into whether the evidence in the record would support a finding of guilt beyond a reasonable doubt does not require us to ask if we believe that the evidence established guilt beyond a reasonable doubt, but rather if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) Id. We conclude that there was sufficient evidence for the jury to conclude as it did.

A

The defendant's first claim is that there was insufficient credible evidence that he was involved in setting the house on fire. Specifically, he claims that the only two witnesses who testified against him were not believable.

As an appellate court, we cannot retry the case or evaluate the credibility of witnesses. *State* v. *Baldwin*, 224 Conn. 347, 367, 618 A.2d 513 (1993); *State* v. *Rivera*, 30 Conn. App. 224, 231, 619 A.2d 1146, cert. denied, 225 Conn. 913, 623 A.2d 1024 (1993). It is not our function to determine if the jury was correct in its evaluation of the credibility of the various witnesses. *State* v. *Robinson*, 213 Conn. 243, 256, 567 A.2d 1173 (1989). The issue is whether there was sufficient evidence before the jury from which it reasonably could have found the intent necessary under the statute. We conclude that there was.

The evidence presented at trial overwhelmingly supports the conclusion that the defendant started the fire or caused the explosion. It was uncontroverted that on the morning of October 23, 1996, the house located at 16 Clover Place in New Haven was set afire and an explosion related to the fire took place. From the testi-

mony of fire officials it was clear that a large quantity of gasoline intentionally was used to set the fire. Hutchings saw the defendant with another man walking between the houses located at 16 and 18 Clover Place carrying a large bucket or jug with a handle. Hunter also heard the explosion, ran to her front porch and saw the defendant stumbling and running off the porch at 16 Clover Place wearing a smoldering coat. Hutchings saw that the building at 16 Clover Place was on fire and saw the defendant running between the houses on Clover Place wearing a coat that was on fire.

Although the defendant attacked the accuracy and motives of the two witnesses, the jury reasonably could have found on the basis of the facts presented and the reasonable inferences drawn therefrom that there was sufficient and credible evidence presented at trial that the defendant was involved in setting the house on fire. We conclude that the jury could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt, and, therefore, the court properly denied the motion for judgment of acquittal.

### B

The defendant next claims that the evidence was insufficient to support a conviction of arson in the first degree in violation of § 53a-111.[6]

Count one of the information charged the defendant with a violation of § 53a-111 (a), which provides in relevant part that "[a] person is guilty of arson in the

---

[6] General Statutes § 53a-111 provides: "(a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied; or (2) any other person is injured, either directly or indirectly; or (3) such fire or explosion was caused for the purpose of collecting insurance proceeds for the resultant loss; or (4) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury."

first degree when, with intent to destroy or damage a building . . . he starts a fire or causes an explosion, and . . . (2) any other person is injured, either directly or indirectly . . . ." The state based this charge on the injuries sustained by Stacey and Mineri, the firefighters who were injured en route to the fire. To support his claim of insufficient evidence, the defendant points to the comments by the commission to revise the criminal statutes relating to § 53a-111, which state in relevant part: "This section is aimed at the situation where, when the fire or explosion is started, a person is in or near the building and is thus placed in great danger. . . ." Commission to Revise the Criminal Statutes, Penal Code Comments, General Statutes (1971), p. 37. The defendant claims that there was no evidence that people were in the building when the fire started and therefore there is insufficient evidence of arson in the first degree.

The defendant relies on the wrong version of § 53a-111. That statute, as amended by Public Acts 1979, No. 79-570, § 3, effective October 1, 1979, eliminated the requirement that the injuries be sustained at the time the fire or explosion is started and while a person is in or near the building. The defendant's claim is based on the statute as it existed prior to this amendment and the comments relating thereto, which are not applicable here. The statute is unambiguous and in plain language imposes liability if anyone is injured, "either directly or indirectly" by a defendant's intentional actions. Here, there is sufficient evidence for a reasonable jury to find that Stacey and Mineri were injured indirectly by the defendant's actions when the fire truck they were driving to the fire was struck by a motorist.

C

The defendant next argues that there was no testimony or evidence presented that firemen or peace officers at the scene faced a substantial risk of bodily injury within the meaning of § 53a-111 (a) (4), from the fire

that the defendant is alleged to have started. This argument fails because the testimony of Heinz clearly demonstrates that the firefighters who had fought the fire at 16 Clover Place faced a substantial risk of bodily injury. Thomas Heinz, of the New Haven fire department, while fighting the fire, pulled a fellow firefighter to safety after he had fallen through a hole in the floor that had been caused by the fire. In addition, Heinz and others needed to be helped by other firefighters when they became trapped and were surrounded by fire. The evidence clearly supports a finding that the firefighters faced a substantial risk of bodily injury from the fire.

## D

The defendant also claims that the evidence was insufficient to support the jury's verdict on count one because the injuries sustained by Stacey and Mineri when their fire truck was struck by a motorist were neither substantial nor foreseeable. He claims that the firefighters who were injured did not suffer foreseeable injuries because they were injured in an unexpected accident, their injuries were not intended by him and the injuries were not substantial.

Section 53a-111 (a) (2) does not require that the defendant possess the intent to injure the firefighters. It requires proof that the defendant, with the intent to destroy or damage a building, started a fire or caused an explosion and "any other person is injured . . . indirectly . . . ." The statute also does not require that the injuries be foreseeable or substantial. The defendant has not provided compelling arguments and has not cited any relevant precedent to support his position. The defendant's claim therefore fails.

## III

The defendant contends that the court improperly denied his motion to suppress a statement[7] that he had

---

[7] Although the defendant states that no suppression hearing was held in connection with his motion to suppress, there is nothing in the record that

made to the police. He claims that the court improperly allowed that statement to be introduced at trial despite the fact that he had objected to its admission into evidence on the ground of hearsay.

The following facts are necessary for our resolution of this claim. Detective John Bashta of the fire investigation unit of the New Haven police department interviewed the defendant and asked him if he could remember what he had been doing at the time of the fire. The defendant said that he was with a female getting high on the morning of the fire. At trial, when Bashta was asked what the defendant's response was when asked what he was doing at the time of the fire, the defendant objected on the grounds that anything he may have said was hearsay and because the testimony would be prejudicial. The court overruled the objection and concluded that the statement was an alibi for the defendant and therefore was relevant, and that its probative value outweighed any prejudicial impact.

"[T]he vast weight of authority, judicial, legislative, and scholarly, supports the admissibility without restriction of any statement of a party offered against that party at trial. *State* v. *Stepney*, 191 Conn. 233, 251, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). There is no requirement that the statement of a party necessarily be against the party's interest either when made or offered in order to be admissible. C. McCormick, Evidence (3d Ed.) § 262; C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.5.1." (Internal quotation marks omitted.) *State* v. *Rosado*, 218 Conn. 239, 250–51, 588 A.2d 1066 (1983). We agree with the court that the statement made

supports his claim that he filed a motion to suppress or made a request for a suppression hearing. At trial, defense counsel objected, on the basis of hearsay, to the introduction into evidence of a statement made by the defendant to the police. The court held a hearing outside the presence of the jury and overruled the objection.

by the defendant to the police as to his whereabouts on the morning of the fire was tantamount to being an alibi and was relevant to the matter before the court. The court acted properly in this matter.

## IV

The defendant claims that the court improperly prevented him from questioning a key witness about her veracity and motive for testifying to show that the witness had intentionally misidentified him. Specifically, the defendant claims that he was prevented from showing a course of conduct, common plan and scheme in that the witness had previously given testimony in other cases, including three arson cases and one homicide case, in exchange for money. Additionally, the defendant claims that the court improperly prevented him from questioning the witness about her testimony in a prior case involving a fire at a restaurant and from exploring her past criminal record and drug abuse.

The following additional facts are necessary for the resolution of this claim. The state filed a motion in limine seeking to restrict the defendant's cross-examination of Hutchings as to whether she was a police informant. Defense counsel objected and the court allowed him to question the witness with respect to this issue out of the presence of the jury. During the course of voir dire, the court permitted defense counsel to inquire extensively into the relationship that Hutchings had with the police.

After voir dire was completed, the court ruled in part that "the fact that she did give information to the police in three other arson matters, that you may inquire into . . . and that she did use crack cocaine years ago, that is out; and whether she has been involved in robberies, her answer is no, and that ends that, so that is out; and the police looking the other way, you have to ask the police that question, not her, so that is out."

"The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . *State* v. *Colton*, [227 Conn. 231, 248–49, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996)]. The primary interest secured by confrontation is the right to cross-examination; *Douglas* v. *Alabama*, 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965); and an important function of cross-examination is the exposure of a witness' motivation in testifying. *Greene* v. *McElroy*, 360 U.S. 474, 496, 79 S. Ct. 1400, 3 L. Ed. 2d 1377 (1959). Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. *State* v. *Lubesky*, 195 Conn. 475, 481–82, 488 A.2d 1239 (1985). In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. *Davis* v. *Alaska*, 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974) . . . . *State* v. *Santiago*, 224 Conn. 325, 331, 618 A.2d 32 (1992). In determining whether cross-examination was unduly restricted, the entire cross-examination must be examined. *State* v. *Asherman*, 193 Conn. 695, 721, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). Once the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment, restrictions on the scope of cross-examination are within the sound discretion of the trial judge. *State* v. *Jones*, 205 Conn. 638, 670, 534 A.2d 1199 (1987)." (Internal quotation marks omitted.) *State* v. *Valentine*, 240 Conn. 395, 407–408, 692 A.2d 727 (1997).

We have examined the transcript in detail and conclude that the defendant was permitted to cross-exam-

ine Hutchings sufficiently to satisfy his right to confrontation. Defense counsel elicited, before the jury, the fact that Hutchings had acted as an informant for the police on numerous occasions, that she had given the police information about other arsons and a homicide, that she had been paid by the police to do work for them on many occasions and that she had smoked marijuana recently. We conclude that the defendant's cross-examination of Hutchings was sufficient to comport with the constitutional standards embodied in the confrontation clause.

Moreover, the court did not abuse its discretion in excluding the details of the information that had been given to the police concerning the other arsons and the homicide. To allow questions concerning the witness' detailed recitation of her knowledge of the other arsons and the homicide, which were not related to the present case, would have resulted in a mini-trial. It would have unnecessarily lengthened the trial of the defendant and diverted the focus of the jurors from the matter before them. We conclude that the court did not abuse its discretion in limiting the defendant's cross-examination of Hutchings regarding such facts.

## V

The defendant's final claim is that the court should have granted his motion for a speedy trial. This claim has no merit.

On September 16, 1997, the defendant, pro se, filed a motion for a speedy trial. On September 17, 1997, the court denied the motion as untimely and informed the defendant that he could file another motion after September 24, 1997. On September 26, 1997, the defendant filed a second motion for a speedy trial. The court held a hearing on the motion, at which the defendant was represented by a different attorney than his trial attorney, Lawrence S. Hopkins. The court determined that

Hopkins was unable to attend the proceedings because he was trying another matter. In addition, Hopkins was scheduled to begin a different trial representing a defendant who had filed a speedy trial motion that took precedence over the defendant's speedy trial motion in this case. Under these circumstances, the court found good cause to delay the defendant's trial until Hopkins was available.[8] The court explained its decision to the defendant and stated, "When the case in Bridgeport finishes, he's going to come directly here to try your case. Okay?" The defendant stated, "All right, thank you."

Pursuant to Practice Book § 43-41, if "a trial is not commenced within thirty days of the filing of a motion for speedy trial by the defendant at any time after such time limit has passed, the information shall be dismissed with prejudice, on motion of the defendant filed after the expiration of such thirty day period . . . ." If at the time of a speedy trial hearing an attorney "is then engaged in another criminal trial, the court has the inherent power to suspend the running of that period for a reasonable time until the attorney becomes available, and . . . neither the statute[9] nor the rules of practice precludes the exercise of that power." *State* v. *Brown*, 242 Conn. 389, 405, 699 A.2d 943 (1997). Here, the court found good cause to delay the commencement of the defendant's trial until immediately after his attorney concluded a different trial. See Practice Book § 43-41 ("[w]hen good cause for delay exists, the trial shall commence as soon as is reasonably possible . . . ."). Accordingly, the court acted properly in extending the defendant's trial date. See *State* v. *Brown*, supra, 405.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] The defendant's trial commenced on November 10, 1997. The defendant did not bring the speedy trial matter to the court's attention again nor did he file a motion to dismiss on the basis of a speedy trial violation.

[9] See General Statutes § 54-82m.