******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* GIOVANNI P.*
(AC 35580)

Gruendel, Alvord and West, Js.

*Argued October 15, 2014—officially released February 10, 2015*

(Appeal from Superior Court, judicial district of New Britain, D'Addabbo, J.)

*Jon L. Schoenhorn*, with whom, on the brief, was *Irene J. Kim*, for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, was *Brian Preleski*, state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Giovanni P., appeals from the judgment of the trial court revoking his probation and imposing an eighty month sentence of incarceration. On appeal, the defendant claims that (1) the court improperly admitted a video recording of an interview conducted with his son, F.P.; (2) the court improperly admitted the testimony of Marcela C., who is the defendant's former wife and the mother of F.P., as to statements made to her by F.P.; and (3) the state violated his right to due process by suppressing exculpatory information.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. On July 20, 1999, the defendant pleaded guilty to one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On October 15, 1999, the defendant was sentenced to a total effective sentence of twelve years incarceration, execution suspended after five years, and ten years probation with special conditions. The terms of the defendant's probation included the standard conditions that he not violate any criminal law and that he report to his probation officer as directed. The relevant special conditions of the defendant's probation included that he register as a sex offender and have no unsupervised contact with minors.[2] The defendant's probation began on October 13, 2004.

In 2004, the defendant met and married Marcela C., and the couple had a son, F.P., in 2006. The defendant was allowed supervised contact with his son after he completed a family education program. The couple filed for divorce in July, 2008. Marcela C. claimed that she witnessed F.P. exhibiting sexualized behaviors sometime in 2010, which she described as "humping" her boyfriend and his brother. In February, 2011, after learning from a babysitter that F.P. had placed an object between the buttocks of the babysitter's child, Marcela C. filed a complaint with the New Britain Police Department. The defendant was arrested for sexual assault in the first degree in violation of § 53a-70 (a) (2) and risk of injury to a child in violation of § 53-21 (a) (2).[3] The defendant was subsequently charged with violating the terms of his probation in violation of General Statutes § 53a-32. The warrant alleged three grounds for the violation: (1) the commission of new crimes, (2) missing probation appointments, and (3) having unsupervised contact with F.P.

A violation of probation hearing was held.[4] In its oral decision, the court made three findings by a preponderance of the evidence. First, it found that the defendant missed scheduled probation appointments, thereby violating the standard condition of his probation requiring

him to report at the direction of his probation officer.[5] Second, the court found that the defendant had unsupervised contact with F.P., thus violating the special condition of his probation that he not have unsupervised contact with any minor.[6] Third, the court found that the defendant had engaged in criminal conduct, thereby violating a standard condition of his probation not to violate any laws.[7]

As a preliminary matter, we set forth general principles of law pertaining to revocation of probation proceedings. "A revocation of probation hearing has two distinct components and two purposes. A factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. If a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served." (Internal quotation marks omitted.) *State* v. *Quinones*, 92 Conn. App. 389, 391, 885 A.2d 227 (2005), cert. denied, 277 Conn. 904, 891 A.2d 4 (2006). "[A] probation revocation proceeding is civil in nature and, therefore, does not require all of the procedural components associated with an adversary criminal proceeding. . . . As such, the state's burden in probation revocation proceedings is governed by the fair preponderance of the evidence standard, which is the ordinary civil standard of proof." (Citation omitted; internal quotation marks omitted.) *State* v. *Holmes*, 70 Conn. App. 4, 8, 796 A.2d 561 (2002). "It is well settled that probation proceedings are informal and that strict rules of evidence do not apply to them. . . . Hearsay evidence may be admitted in a probation revocation hearing if it is relevant, reliable and probative." (Citation omitted.) *State* v. *Verdolini*, 76 Conn. App. 466, 471, 819 A.2d 901 (2003).

I

The defendant first claims that the court erred in admitting into evidence a video recording of an interview conducted with F.P. by Erin Byrne, a clinical child interview specialist at the Children's Advocacy Center (center), located at Saint Francis Hospital. The defendant argues that the court erred in admitting the video recording because (a) it did not satisfy the medical treatment exception to the hearsay rule, and (b) the admission of the video recording violated his due process right to cross-examine F.P. We disagree with both of these claims.

The following additional facts are relevant to the resolution of the defendant's claims. After witnessing the "humping" behaviors sometime in 2010 and after learning of the incident with the babysitter's daughter in February, 2011, Marcela C. contacted the police in February, 2011. On February 28, 2011, F.P. was interviewed by Byrne. The court recounted F.P.'s statements made during the interview as follows: "F.P. states that the father touches him with the finger, does it a lot of

times, father touches the butt, he goes inside, touches it a lot of times with fingers. Father says, fun, fun. It really happened. Not pretend. It makes his body feel funny. F.P. touches father's body. Father's body wiggles. Touches father underneath clothes. Touches father butt and then indicated no more talk about body parts." The interview was recorded. During the violation of probation hearing, the state called Byrne as a witness and also offered the video recording into evidence.[8] The defendant objected to the video, conducted a voir dire of Byrne, and argued that admission of the video recording was inadmissible hearsay and would violate his right to confrontation. The state offered the video recording under the medical treatment exception to the prohibition on hearsay testimony. Alternatively, the state argued that the video recording was admissible under *State* v. *Shakir*, 130 Conn. App. 458, 465, 22 A.3d 1285, cert. denied, 302 Conn. 931, 28 A.3d 345 (2011).

After taking a recess until the next morning to review the law and the arguments, the court admitted the video recording into evidence. The court addressed the state's offer under the medical treatment exception, concluding that the interview was conducted for the purpose of medical diagnosis and treatment, and therefore was admissible under *State* v. *Hickey*, 135 Conn. App. 532, 551–52, 43 A.3d 701, cert. denied, 306 Conn. 901, 52 A.3d 728 (2012).

A

The defendant first claims evidentiary error, arguing that the video recording did not satisfy the medical treatment exception to the hearsay rule. We find no error.

We first set forth our standard of review. "To the extent that a court admits evidence relying on an interpretation of the Connecticut Code of Evidence, our review is plenary; but . . . where the court's decision was an application of the facts to the law, we afford the trial court's ruling deference and will only reverse for an abuse of discretion." *State* v. *Juan V.*, 109 Conn. App. 431, 446, 951 A.2d 651, cert. denied, 289 Conn. 931, 958 A.2d 161 (2008). Because the defendant's evidentiary claim turns on the purpose of the statements made during the interview, which involves an application of the facts to the law, the proper standard of review is abuse of discretion. See *State* v. *Miller*, 121 Conn. App. 775, 781, 998 A.2d 170 (reviewing for abuse of discretion admission under medical treatment exception of licensed family therapist testimony recounting statements of sexual abuse victim because purpose of victim's interview determined on the basis of witness credibility), cert. denied, 298 Conn. 902, 3 A.3d 72 (2010); *State* v. *Donald M.*, 113 Conn. App. 63, 70, 966 A.2d 266 ("because neither party contends that the statements in the interview were not hearsay, we need only determine whether the court properly concluded

that those statements fell within the medical treatment exception to the hearsay rule"), cert. denied, 291 Conn. 910, 969 A.2d 174 (2009); *State* v. *Juan V.*, supra, 109 Conn. App. 446–47.

"We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . The trial court has wide discretion to determine the relevancy [and admissibility] of evidence . . . . In order to establish reversible error on an evidentiary impropriety . . . the defendant must prove both an abuse of discretion and a harm that resulted from such abuse." (Internal quotation marks omitted.) *State* v. *Hickey*, supra, 135 Conn. App. 543.

We next set forth the legal principles relating to the medical treatment exception to the hearsay rule. "An out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies." *State* v. *Hoffler*, 55 Conn. App. 210, 215–16, 738 A.2d 1145 (order of probation admissible in probation revocation proceeding under business records exception), cert. denied, 251 Conn. 923, 742 A.2d 360 (1999). "Out-of-court statements made by a patient to a physician may be admitted into evidence if the declarant was seeking medical diagnosis or treatment, and the statements are reasonably pertinent to achieving these ends." (Internal quotation marks omitted.) *State* v. *Cecil J.*, 99 Conn. App. 274, 289, 913 A.2d 505 (2007), aff'd, 291 Conn. 813, 970 A.2d 710 (2009). "The term 'medical' encompasses psychological as well as somatic illnesses and conditions. . . . Furthermore, statements made by a sexual assault complainant to a social worker may fall within the exception if the social worker is found to have been acting within the chain of medical care." (Citations omitted.) *State* v. *Telford*, 108 Conn. App. 435, 440, 948 A.2d 350, cert. denied, 289 Conn. 905, 957 A.2d 875 (2008). "In sexual abuse cases, statements made by the complainant about the identity of the person causing the injury may be found relevant to proper diagnosis and treatment." (Internal quotation marks omitted.) *State* v. *Hickey*, supra, 135 Conn. App. 550.[9]

The defendant challenges the court's determination that the video recording was admissible because the interview was conducted for medical purposes. The court made several findings in support of its determination. First, the court found credible Byrne's testimony regarding her education and certification as a forensic examiner. Second, the court credited Byrne's testimony that the interview she conducted was for medical purposes, that the interview was "the first modality of treatment that [a child coming to the center] would receive," and that she did recommend further treat-

ment. Third, the court further credited other aspects of her testimony, noting "she has testified that [the interview] was conducted in a manner that was based on her training which indicated a minimization of suggestiveness," she did not coach F.P., and she was the only person in the room with F.P.[10]

The defendant has not demonstrated that the court abused its discretion in determining that the interview was for medical purposes and, thus, admitting the video recording into evidence.[11] In reviewing the court's decision, we note that the court relied in part on the testimony of Byrne as to the purposes of the interview and the manner in which it was conducted. In such situations, we "yield to the court's assessment" of the witness' credibility. *State* v. *Miller*, supra, 121 Conn. App., 782–83 (deferring to trial court's assessment of credibility of family therapist testifying as to purpose of interview she conducted). The defendant also argues that the "hearsay exception for medical treatment and diagnosis is based upon the speaker's state of mind— not that of the person asking the questions." This court has previously held that this requirement can be satisfied inferentially when the speaker is a juvenile. *State* v. *Juan V.*, supra, 109 Conn. App. 446–47. In fact, this court has upheld the admission of statements made during an interview of an approximately ten year old child who "testified that she did not know why she was taken to Saint Francis Hospital," where the interview was conducted. *State* v. *Miller*, supra, 777, 782 n.4, 783.

In light of our determination that the court properly admitted the video recording under the medical treatment exception, we are not required to address the alternate ground for admission under *State* v. *Shakir*, supra, 130 Conn. App. 465. Because the trial court also found that the video recording was admissible under *Shakir*, however, we briefly note our agreement. In *Shakir*, this court upheld the trial court's admission in a violation of probation hearing of a video recording of a forensic interview with a child disclosing sexual abuse. Id., 461, 465. This court applied the standard for admission of hearsay evidence in a revocation of probation proceeding, determining whether the hearsay evidence is "relevant, reliable and probative." (Internal quotation marks omitted.) Id., 464. This court explained: "The [trial] court had before it [the investigating detective's] testimony that (1) the chain of custody for the video was intact, (2) the minor complainant was not influenced as to her answers and (3) as a matter of procedure, the police department required questioning to be performed by a licensed clinical social worker trained to conduct such interviews. Moreover, because strict admissibility rules do not apply . . . and the trier of fact was the court, not a jury, it was within the court's discretion upon viewing the video to assess the reliability of the evidence in light of the circumstances reflected on the video." (Citation omitted.) Id., 465.[12] In

this instance, the court had before it equally sufficient evidence that the hearsay was reliable and probative. The court found the chain of custody of the video to be intact. The court had before it Byrne's testimony that she did not coach F.P. and also her testimony regarding her education and training. Therefore, the trial court did not abuse its discretion in admitting the video recording.

B

The defendant next claims that, by admitting the video recording in place of F.P.'s testimony, he was denied his right to cross-examine an adverse witness in violation of his right to due process under the fourteenth amendment to the United States constitution.[13] Specifically, he claims that the state must "demonstrate 'good cause' before [the court denies] a probationer the right to cross-examine the complainant." He argues there was no good cause in the present case.

"The due process clause of the fourteenth amendment to the United States constitution requires that certain minimum procedural safeguards be observed in the process of revoking the conditional liberty created by probation." (Internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 182, 842 A.2d 567 (2004). The basic requirements include: "(a) written notice of the claimed violations of [probation]; (b) disclosure to the [probationer] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body . . . [the] members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation]." *Morrissey* v. *Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); see also *Gagnon* v. *Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973) (extending due process requirements outlined in *Morrissey* for parole hearings to probation hearings).

"In considering whether the court had good cause for not allowing confrontation or 'that the interest of justice [did] not require the witness to appear'; Fed. R. Crim. P. 32.1 (b) (2) (C); the court should 'balance, on the one hand, the defendant's interest in confronting the declarant, against, on the other hand, the government's reasons for not producing the witness and the reliability of the proffered hearsay.'" *State* v. *Shakir*, supra, 130 Conn. App. 468. Federal decisions have suggested, however, that the court is not required to conduct such balancing in all circumstances. "[U]nder [*United States* v. *Jones*, 299 F.3d 103, 113 (2d Cir. 2002)], the balancing analysis need not be made where the proffered out-of-court statement is admissible under an established

exception to the hearsay rule." *United States* v. *Aspinall*, 389 F.3d 332, 344 (2d Cir. 2004); see *United States* v. *Jones*, supra, 113 (requirement that court consider government's grounds for not allowing confrontation did not apply because statements were admissible under excited utterance exception).

The defendant argues that his due process right to cross-examine F.P. has been violated because, without good cause, he was unable to cross-examine F.P. concerning the hearsay statements that were admitted into evidence through the video recording. The defendant fails to acknowledge, however, that the cases he cites in his brief illustrate that the admission of F.P.'s statements under an established hearsay exception, as with the medical treatment exception in the present case, impacts the analysis as to whether good cause has been established. In *United States* v. *Taveras*, 380 F.3d 532, 536 (1st Cir. 2004), the court stated that "[a]n important element of the good cause analysis is the reliability of the evidence that the Government seeks to introduce." The first indicia of reliability the court considered was whether the hearsay was admissible under the excited utterance exception. See id., 537; see also *United States* v. *Carthen*, 681 F.3d 94, 100 (2d Cir. 2012) ("A proffered hearsay statement that falls within an established exception is of course admissible in a [violation of supervised release] hearing. For statements that would be *inadmissible* under the Federal Rules of Evidence, a determination of 'good cause' requires the court to balance 'the defendant's interest in confronting the [declarant against] . . . the government's reasons for not producing the witness and the reliability of the proffered hearsay.' " [Emphasis added.]), cert. denied, U.S. , 133 S. Ct. 837, 184 L. Ed. 2d 664 (2013). Because F.P.'s statements were admitted into evidence under the medical treatment exception, the admission of the video recording did not violate the defendant's right to due process under the fourteenth amendment to the United States constitution.

II

The defendant next claims that the court erred in admitting the testimony of Marcela C. as to statements made to her by F.P. The following additional facts are relevant to this claim. Marcela C. testified that F.P. began to do inappropriate things in 2010, such as "humping my boyfriend and his brother." When asked whether she had talked to F.P. about these behaviors and what he told her about them, the defendant objected. The state argued that the testimony was admissible as reliable hearsay under *State* v. *Dollinger*, 20 Conn. App. 530, 541, 568 A.2d 1058, cert. denied, 215 Conn. 805, 574 A.2d 220 (1990), because the statement contained content that was beyond the ken of a child of F.P.'s age. The defendant argued that (1) Marcela C., having been involved in an "ugly divorce," had motive

to hurt the defendant, and (2) the statement of F.P. was not reliable because it is hearsay and the defendant might not later have an opportunity to question F.P. about the statement if he does not testify. The court took a brief recess to review *Dollinger* and then overruled the defendant's objection. Marcela C. then testified as to statements of F.P., that "he said that's what his father does to him," and "he said my father's pee pee comes with mine . . . ."

The defendant claims that the statements were unreliable hearsay, and that the court failed to "consider the requirement that uncorroborated hearsay is only admissible if there is good cause to excuse the presence of the declarant." He specifically argues that the court abused its discretion by "[t]he . . . admission of this testimony [that] was not corroborated by any physical evidence, not repeated to an unbiased professional, and the act itself was something that a four year old could mimic after witnessing animals engage in such act . . . ." We are not persuaded.

The central arguments as to whether the court abused its discretion in admitting the statements are premised on *State* v. *Dollinger*, supra, 20 Conn. App. 530. In that case, a twenty-eight month old child exhibited sexualized behaviors, leading the child's mother to ask who had showed her these behaviors and what else she had learned. Id., 532–33. The child named her uncle as the person who had showed her the behaviors. Id. This court upheld the trial court's admission of the testimony of the child's mother and her boyfriend as to the statements made by the child to them under the residual exception to the hearsay rule. Id., 542. In making its determination of reliability and trustworthiness, this court considered the following factors: (1) the child demonstrated sexual behavior that was inappropriate for her age, (2) there was no suggestion that the child was coached or prompted, (3) the statement was corroborated by physical evidence of injury, and (4) the defendant had sufficient opportunity to cross-examine the testifying witnesses as to any bias. Id., 541–42.

The trial court in the present case, in ruling on the defendant's objection, noted: "[T]he state's position is based in large part on the ruling in *Dollinger*. The court has had an opportunity to review that case. First of all, *Dollinger* was not a violation of probation hearing case; it was a trial and this is a violation of probation hearing which starts out with the ability for hearsay evidence to be allowed. It is allowed if it can be found as probative, reliable and there's some . . . indicia of reliability."

We are mindful that "[i]t is well settled that the strict rules of evidence do not apply to probation proceedings. . . . It is just as well settled that hearsay evidence is admissible in a probation revocation hearing when the evidence is relevant, reliable and probative."[14] (Citations omitted.) *State* v. *Gumbs*, 94 Conn. App. 747, 751,

894 A.2d 396, cert. denied, 278 Conn. 917, 899 A.2d 622 (2006). The trial court properly noted that the statements by F.P. were probative in that they were in response to his mother's question about the conduct he was exhibiting. The court also indicated that the statements were reliable, in that the behavior he exhibited was not behavior that would normally be exhibited by a young child of F.P.'s age. The court further noted that there was no evidence of any coaching or leading questioning by Marcela C. and that the defendant would have the opportunity to cross-examine Marcela C. as to any bias.[15] The court clearly articulated the proper considerations in ruling on the defendant's objection, and we, thus, determine that the testimony was properly admitted.

The defendant challenges the trial court's findings that the statements were probative and reliable. The defendant attempts to distinguish *Dollinger* by noting that the child in *Dollinger* was determined incompetent to testify and was, therefore, unavailable, and that there was corroboration of the child's statements. This court has considered the application of the *Dollinger* factors[16] to a civil case, noting: "*Dollinger* provides a list of various factors that the court may consider, if relevant to the particular case, in determining the admissibility of third party statements under the residual exception to the rule against hearsay. The list is neither determinative nor rigid." *Doe* v. *Thames Valley Council for Community Action, Inc.*, 69 Conn. App. 850, 862–63, 797 A.2d 1146 (disagreeing with defendants that court was required to take account of lack of corroborating physical evidence where alleged sexual assault involved improper touching), cert. denied, 261 Conn. 906, 804 A.2d 212 (2002). This court also rejected the idea that "a balance sheet approach governs a court's exercise of its discretion. Admissibility in a civil case does not turn on how many *Dollinger* factors a plaintiff can establish." Id., 859. To the extent that the defendant's argument is premised on the fact that the circumstances in *Dollinger* provided a stronger basis for admitting the hearsay statements, it must be taken into account that a probation revocation proceeding is "not a criminal proceeding but is instead more akin to a civil proceeding . . . ." *State* v. *Lantz*, 120 Conn. App. 817, 822, 993 A.2d 1013 (2010). Therefore, the statements were only required to satisfy the standard that the trial court correctly set out, namely, that the hearsay statements be relevant, reliable, and probative. We, thus, determine there was no error in the admission of Marcela C.'s testimony.

### III

The defendant lastly claims that the state violated his due process rights by suppressing exculpatory information. See *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Specifically, he claims

that the state "fail[ed] to disclose to the defense prior to or during the trial the impeachment evidence pertaining to [the center] and Byrne, including the stated law enforcement purposes of the forensic interview, and by failing to correct the misleading testimony that the interview was for medical purposes." The defendant further argues that "it was the obligation of the state to disclose in a timely manner the fact that the [center] is funded by federal law enforcement and [Department of Children and Families] dollars . . . ."[17]

The defendant concedes "that he did not separately assert a claim of prosecutorial impropriety [at trial] due to the withholding of *Brady* material." He argues, however, that "[a] claim that the state failed to disclose exculpatory evidence in a timely fashion necessarily requires no trial preservation, since *Brady* violations normally arise after trial." We disagree with the defendant's argument that his claim does not need to be preserved in the trial court, and, as a result, does not require an analysis under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[18] See *Skakel* v. *State*, 295 Conn. 447, 521, 991 A.2d 414 (2010) (declining to address *Brady* claims in part because trial court had not ruled on them nor had defendant requested *Golding* review); *State* v. *Ouellette*, 295 Conn. 173, 186–87, 989 A.2d 1048 (2010) (conducting *Golding* review of *Brady* claim that was not made at trial). Because the defendant did not raise his claim before the trial court, it must be reviewed under *Golding*. We determine that the first two prongs of *Golding* are satisfied, and we, thus, consider whether his claim satisfies the third prong, which requires that "the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . ." *State* v. *Golding*, supra, 240.

The constitutional violation claimed by the defendant is the suppression of impeachment evidence by the state. "In *Brady* v. *Maryland*, supra, 373 U.S. 87, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (Internal quotation marks omitted.) *State* v. *Rivera*, 152 Conn. App. 248, 255, 96 A.3d 1285, cert. denied, 314 Conn. 934, 102 A.3d 85 (2014). "To establish a *Brady* violation, the [defendant] must show that (1) the government suppressed evidence, (2) the suppressed evidence was favorable to the [defendant], and (3) it was material [either to guilt or to punishment]. . . . Impeachment evidence as well as exculpatory evidence falls within *Brady*'s definition of evidence favorable to an accused." (Citation omitted; internal quotation marks omitted.) *State* v. *Richard W.*, 115 Conn. App. 124, 137, 971 A.2d 810, cert. denied, 293 Conn. 917, 979 A.2d 493 (2009).

We determine that the defendant cannot satisfy *Gold-*

*ing*'s third prong. He has not established that the alleged constitutional violation clearly exists because the defendant failed to establish that any evidence was suppressed. See *State* v. *Collic*, 55 Conn. App. 196, 207, 738 A.2d 1133 (1999). "[E]vidence is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of [that] evidence. . . . Documents that are part of public records are not deemed suppressed if defense counsel should know of them and fails to obtain them because of lack of diligence in his own investigation." (Citations omitted; internal quotation marks omitted.) *United States* v. *Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995); see also *State* v. *Simms*, 201 Conn. 395, 407, 518 A.2d 35 (1986) ("any information bearing on . . . credibility as a witness was as available to the defendant as it was to the state, or could have been discovered through reasonably diligent research"); *State* v. *Richard W.*, supra, 115 Conn. App. 143 ("federal actions were a matter of public record to which the state and the defendant had equal access").

The evidence that the defendant claims was suppressed includes: (1) material published on the center's website about the center, the interviews it conducts, and its funding sources, and (2) information suggesting collaboration between the center and the state's attorney's office. This evidence was not suppressed within the meaning of that term. With regard to the defendant's claim concerning suppression of information published on the center's website, we determine that the information was as available to the defendant as it was to the state; *State* v. *Simms*, supra, 201 Conn. 407; and was either already known or could have been discovered by the defendant. During arguments before the trial court as to the admissibility of the video recording, the defendant's counsel claimed that "a large part of the budget for [the center] is paid by the Chief State's Attorney's Office," but noted that he did not have any proof at the time to support the claim.[19] Moreover, on appeal, the defendant cites a case in his brief in which this court considered an argument as to whether the funding sources of the same center impacted the determination as to whether an interview conducted there was for medical purposes. That argument proved unsuccessful.[20]

The defendant's second alleged impropriety regarding his *Brady* claim is that the state argued for admission of the video recording under the medical treatment exception, while "knowing that [the center] asserts that its forensic interviews are conducted in collaboration with [the state's attorney's] office under a statutorily-mandated interdisciplinary investigation scheme." The defendant does not identify any particular evidence that was suppressed, but rather argues that the impropriety was in offering false or misleading testimony. In support

of this claim, the defendant merely cites to provisions of our General Statutes, which he claims "inform [the] analysis" as to the collaboration that he argues is evidence of false testimony. Having reviewed the record in light of the defendant's arguments, we conclude that the defendant has not established that the state offered false or misleading testimony.[21]

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] The defendant also argues that the court abused its discretion in denying his motion for a new hearing or to open the judgment. That claim fails for a number of reasons. See footnote 17 of this opinion.

[2] Other special conditions imposed included that he earn a GED, maintain full-time employment, and have no contact with the victim or the victim's family.

[3] The defendant filed with this court two motions to amplify the record to include the proceedings following from these charges. Both of his motions were dismissed. In his reply brief, the defendant again attempts to have these proceedings considered, in this instance, by asking this court to take judicial notice of a written memorandum of decision resulting from these proceedings. Trial court decisions are not binding on this court. See *Conway* v. *Wilton*, 238 Conn. 653, 673 n.12, 680 A.2d 242 (1996) (noting that decision of Appellate Court was not binding on Supreme Court and "tak[ing] no position as to its propriety"). We therefore decline to consider that memorandum of decision.

[4] The state called three witnesses during its case-in-chief: Robert Moreau, a probation officer who had supervised the defendant; Marcela C.; and Erin Byrne, a clinical child interview specialist.

[5] The court credited Moreau's testimony that, over the course of the defendant's probation, he failed to report as directed on six occasions, including February 6, 2007, March 2, 2007, February 21, 2008, October 29, 2008, September 22, 2009, and May 18, 2010. Moreau did not report the defendant for violating the terms of his probation upon missing these appointments, but when he reported the defendant after his arrest, he included the missed appointments as a violation.

[6] The court credited Marcela C.'s testimony that the defendant had been alone when picking up F.P. for visits.

[7] The court credited testimony of Marcela C. and statements made by F.P. in the diagnostic interview in finding by a preponderance of the evidence that the defendant had engaged in conduct that would satisfy the elements of sexual assault in the first degree and risk of injury to a child.

[8] The defendant previously had filed a motion in limine to exclude the video recording. The defendant argued that the evidence should be excluded as violative of the hearsay rule and the due process clause. The court heard brief argument from the defendant's counsel and stated that it would hear from counsel again on the issue when the state offered the video recording.

[9] This court in *State* v. *Hickey*, supra, 135 Conn. App. 536, 549, upheld the admission of testimony of a witness trained as a pediatric nurse-practitioner and forensic medical examiner as to statements made to her by the victim. The defendant argues that the trial court's reliance on *Hickey* was erroneous. Specifically, he argues that "[b]y conflating a forensic medical examiner's testimony with a forensic interviewer's efforts to question a child, the trial court erased any distinction between these two very different procedures." His argument as to a purported erroneous reliance on *Hickey* is irrelevant because there is sufficient case law to support the admission of a video recording of an interview conducted by the type of interviewer in this case. See *State* v. *Donald M.*, supra, 113 Conn. App. 68, 69, 71 (portions of video recording of interview conducted by clinical child interview specialist admissible under medical treatment exception); *State* v. *Juan V.*, supra, 109 Conn. App. 445 and n.10, 447 (entire video recording of interview conducted by clinical child interview specialist admissible under medical treatment exception).

[10] An investigative social worker from the Department of Children and

Families was present behind a two-way mirror. No police were present.

[11] The defendant claims that this court's decision in *State* v. *Carey*, 30 Conn. App. 346, 355, 620 A.2d 201 (1993), rev'd on other grounds, 228 Conn. 487, 636 A.2d 840 (1994), is dispositive of his claim that the video recording was improperly admitted. In *Carey*, this court reversed the decision of the trial court revoking the probation of a defendant because the only evidence presented at the hearing, two hearsay police reports, was insufficient to establish a probation violation. Id., 355–56. This court noted that "[p]ursuant to [*State* v.] *White*, [169 Conn. 223, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975)], hearsay testimony is admissible only if it is supported by other evidence." Id., 354. The reports in *Carey* were not offered or admitted as business records, and this court noted that "[t]he reports . . . do not qualify for admission as evidence under any established exception to the hearsay rule." Id., 351.

We do not need to reach the defendant's claims under *Carey* that, because the hearsay evidence was unsupported, it should have been excluded, because we conclude that the court properly admitted the video recording under the medical treatment exception. See *State* v. *Huckabee*, 54 Conn. App. 758, 763, 738 A.2d 681 (1999) (declining to reach issue as to whether attendance records were admissible under looser standards of probation revocation hearings which allow admissibility of hearsay evidence if reliable and not unsupported because records were properly admitted under business record exception).

[12] Recognizing that the trial court did not have the benefit of our Supreme Court's recent decision in *State* v. *Carrion*, 313 Conn. 823, 839–40, 100 A.3d 361 (2014), we nevertheless note that it provided: "Courts have identified the following nonexclusive factors, among others, as particularly salient in determining the threshold reliability of a child's disclosure of sexual abuse during a forensic interview: (1) the child's age; (2) the child's actions or use of words outside the normal behavior or lexicon of a child of a similar age; (3) the spontaneity of the child's statements; (4) the extent to which the interviewer investigated alternative sources of the child's familiarity with sex; (5) the interviewer's use of leading or suggestive questions; (6) the nature of the abuse or assault; (7) indications that the child has been coached; and (8) the presence of a parent or authority figure." Relevant to these considerations are the following trial court findings: (1) the description of the defendant's conduct by F.P. was beyond the knowledge of a four to five year old boy, (2) Byrne testified that the interview was conducted in such a way that minimized suggestiveness, (3) Byrne testified that she did not coach F.P., and (4) Byrne was the only person in the room with F.P., except for an investigative social worker behind a two-way mirror. While a number of these findings were made prior to viewing the video, the court expressly noted that it "can always revisit it" after it viewed the video if there was any appearance of unreliability. In the court's oral decision finding that the defendant had violated conditions of his probation, which was delivered after the video had been viewed, the court referenced its earlier ruling on the video recording and incorporated it into its decision.

[13] The defendant does not argue that there was a violation of his constitutional rights under the confrontation clause of the sixth amendment to the United States constitution, as shown by the following statement in his reply brief: "The state's detour into confrontation clause analysis and its relevance to probation violation hearings . . . has nothing to do with the defendant's arguments." The defendant noted that he "expressly relied upon the due process clause of the fourteenth amendment and the well-established due process right to confront witnesses at such hearings."

[14] The defendant argues that "the court failed to consider the requirement that uncorroborated hearsay is only admissible if there is good cause to excuse the presence of the declarant." A review of the transcript reveals that the defendant's objection to the admission of F.P.'s statements to Marcela C. included two arguments: (1) the witness had motive to hurt the defendant as a result of their divorce and (2) the statements were not reliable. When the trial court ruled on the objection, it addressed the defendant's objection as to the credibility of the witness and the reliability of the hearsay statements. Thus, the defendant's claim on appeal that the admission of Marcela C.'s testimony denied him the right to confront and cross-examine witnesses was not presented to the trial court. We further note that, under *Golding*, the defendant's claim cannot be reviewed because it fails to satisfy the first prong, which requires that "the record is adequate to review the alleged claim of error." *State* v. *Golding*, 213 Conn. 233, 239, 567 A.2d 823 (1989). Because the defendant failed to object to the admission of the testimony

as a violation of his due process right to cross-examine an adverse witness, the court had no occasion to consider whether there was good cause not to allow confrontation. Therefore, the record is inadequate for review of that claim.

[15] Indeed, the court indicated in its oral decision that it "has considered the testimony of [Marcela C. and] has also considered the credibility . . . challenges to [Marcela C.] by the defense."

[16] In *Dollinger*, the court considered "the age of the child, the nature of the assault, the presence of physical evidence of that assault, the relationship of the child to the defendant, the spontaneity of the statement, the reliability of the statements themselves and the reliability of the testifying witness." *State* v. *Dollinger*, supra, 20 Conn. App. 541.

[17] The defendant additionally claims that the court abused its discretion in denying his motion for a new hearing or to open the judgment for the purposes of impeaching Byrne as to the center's funding sources and purpose. Assuming, arguendo, that the procedures available to a criminal defendant to obtain a new trial under Practice Book §§ 42-53 and 42-55 are available to a defendant in a probation revocation proceeding, the defendant's claim still fails for a number of reasons. First, his claim is, in essence, that he was unable to question Byrne on the information that he obtained from the center's website subsequent to the close of the probation revocation hearing. This is a claim based on newly discovered evidence, which cannot be filed pursuant to § 42-53. *State* v. *Santaniello*, 96 Conn. App. 646, 672, 902 A.2d 1 ("A motion for a new trial under Practice Book [§ 42-53] is limited to trial errors, and cannot be based upon newly discovered evidence. . . . The defendant must bring a petition under [§ 42–55] if he wishes to seek a new trial based upon newly discovered evidence." [Internal quotation marks omitted.]), cert. denied, 280 Conn. 920, 908 A.2d 545 (2006); see *State* v. *Gonzalez*, 106 Conn. App. 238, 260, 941 A.2d 989 (trial court lacked authority to consider defendant's motion for new trial on basis of newly discovered evidence), cert. denied, 287 Conn. 903, 947 A.2d 343 (2008). Second, even if the defendant had properly brought a petition for a new trial under § 42-55, he would not be able to satisfy the four prong test, the first prong of which requires that "the proffered evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence . . . ." (Emphasis omitted; internal quotation marks omitted.) *Williams* v. *Commissioner of Correction*, 100 Conn. App. 94, 100, 917 A.2d 555, cert. denied, 282 Conn. 914, 924 A.2d 140 (2007). Here, the evidence that the defendant sought to use to impeach Byrne was found on the center's website, and therefore "could have been known with reasonable diligence . . . ." (Internal quotation marks omitted.) Id., 101. Third, "[n]ew trials are not granted upon newly discovered evidence which discredits a witness unless the evidence is so vital to the issues and so strong and convincing that a new trial would probably produce a different result." (Internal quotation marks omitted.) *State* v. *Newton*, 59 Conn. App. 507, 512, 757 A.2d 1140, cert. denied, 254 Conn. 936, 761 A.2d 764 (2000). Accordingly, the defendant's claim fails.

[18] Under *State* v. *Golding*, supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.).

[19] The defendant's counsel stated: "Your Honor, it's my understanding, I don't have any proof today, but it's my understanding that a large part of the budget for the Saint Francis facility that does this is paid by the Chief State's Attorney's Office. I do not see that therefore being medically related. It's an investigation tool; that's what it is."

[20] In *State* v. *Juan V.*, supra, 109 Conn. App. 447 n.11, this court noted: "The defendant argues that because some of the funding for the advocacy center came from the office of the chief state's attorney, the mission of the advocacy center is more closely aligned with the goals of law enforcement than with the goals of medical treatment. Although the medical treatment exception explicitly requires that the interviewee have the purpose of obtaining medical treatment, we also believe it is implicit in this rule that the interviewer must also have the purpose of providing medical treatment. In this instance, regardless of whatever other purposes this interview proto-

col may have served, it met the parameters of the exception; [the victim] went to the advocacy center for medical treatment, and [a clinical child interview specialist] interviewed her to assess her health care needs."

[21] The defendant relies on *Adams* v. *Commissioner of Correction*, 309 Conn. 359, 371, 71 A.3d 512 (2013), in which our Supreme Court explained: "When . . . a prosecutor obtains a conviction with evidence that he or she knows or should know to be *false*, the materiality standard is significantly more favorable to the defendant. [A] conviction obtained by the knowing use of *perjured* testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." (Emphasis added; internal quotation marks omitted.) In ruling on the defendant's motion for a new hearing, the court, after hearing the defendant's arguments that the center is "an advocacy center [and] its purpose is to investigate these claims . . . analogous to the police," reiterated that it had found Byrne's testimony as to the purpose for conducting the interview credible. Thus, we will not conclude that the state offered false or misleading testimony.